[No. 1707-2.    Division Two.    January 7, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT LEE CURTIS, *Appellant.*

*Michael D. Smith*, for appellant (appointed counsel for appeal).

*Donald Herron, Prosecuting Attorney*, and *Joseph D. Mladinov, Special Counsel*, for respondent.

PEARSON, J.—Defendant, Robert Lee Curtis, appeals his jury conviction for two counts of assault in the second degree. His sole contention on appeal is that the starter pistol wielded by him is not a "weapon or other instrument . . . likely to produce bodily harm," as required by the applicable statutory definition of the crime. We disagree and, accordingly, affirm the conviction.

Second-degree assault is defined in relevant part by RCW 9.11.020 (4) as follows:

> Every person who, under circumstances not amounting to assault in the first degree—
>
> .  .  .
>
> (4) Shall wilfully assault another with a weapon or other instrument or thing likely to produce bodily harm;
> .  .  .
>
> .  .  .
>
> Shall be guilty of assault in the second degree  .  .  .

The charge arose from an incident at the Lowell School playground in Tacoma. At about 10 p.m. on July 25, 1974,

Dana Crockett and his girl friend, Kathleen Cunha, both 17, walked from Kathleen's nearby home to the playground. They played on the swings for a while and then sat down to talk. Shortly before midnight, defendant approached them and pointed a "gun" at Dana from 15 feet away. He ordered Dana to leave the area and then grabbed Kathleen's arm and began pulling her into an alley. When she voiced objection, he "shot the gun up in the air and put it next to my head and said if I didn't be quiet the next one would be for me." She escaped from defendant when they reached his car.

Defendant does not now dispute that his conduct falls within the definition of an assault. He argues, however, that the "gun"—a starter pistol incapable of firing a projectile—cannot produce bodily harm and therefore he should not have been convicted of the felony of second-degree assault.

█ The statute in question has been often construed on appeal. It is well settled that the instrument used need not be a *deadly* weapon. *State v. Jackson*, 70 Wn.2d 498, 424 P.2d 313 (1967). Moreover, one may commit second-degree assault with an apparently loaded gun which is in fact unloaded, since it is the apparent present ability to give effect to the attempt that is controlling. *State v. Stationak*, 73 Wn.2d 647, 440 P.2d 457 (1968); *State v. Murphy*, 7 Wn. App. 505, 500 P.2d 1276 (1972). But apprehension on the part of the victim is not a necessary element of second-degree assault and need not be proved by the State. *State v. Stewart*, 73 Wn.2d 701, 440 P.2d 815 (1968); *State v. Wigley*, 5 Wn. App. 465, 488 P.2d 766 (1971).

We have previously stated the rationale for upholding a conviction involving a gun not known by the victim to be empty:

> to punish those who achieve fear and apprehension in another by the willful use of a weapon or instrument that has the apparent power to cause bodily harm. *See State v. Stewart*, 73 Wn.2d 701, 440 P.2d 815 (1968). A pistol inherently has this power. The reactions of the person assaulted are not predicated upon the fact of a

gun being loaded or unloaded. In either situation, he is placed in a position of fear, and his apprehension may be inferred unless he actually knows that it is unloaded. *See State v. Miller*, 71 Wn.2d 143, 426 P.2d 986 (1967).

*State v. Thompson*, 13 Wn. App. 1, 4, 533 P.2d 395 (1975).

Defendant acknowledges the foregoing principles, but attempts to distinguish the unloaded gun cases from his use of a starter pistol by arguing that an ordinary pistol—even if unloaded—has an *inherent* capability of firing a bullet and causing bodily harm, while a starter pistol has no such inherent capacity to inflict harm.[1]

In our view, this is a distinction without a difference. The rationale found in *State v. Thompson, supra*, is clearly as applicable to a starter pistol incapable of firing a projectile as to an unloaded gun. When the "gun" was pointed at Dana and then held at Kathleen's head after apparently being discharged into the air, it may safely be inferred that their fears of bodily injury were as great as if the gun had been loaded. The statute is intended to encompass the menacing act of pointing a gun at another with apparent power to inflict bodily harm, such as occurred in this case. *State v. Harris*, 69 Wn.2d 928, 421 P.2d 662 (1966); *State v. Rush*, 14 Wn.2d 138, 127 P.2d 411 (1942); *State v. Murphy, supra*.

We conclude that second-degree assault is committed under RCW 9.11.020 (4) when a starter pistol is pointed at a victim who is placed thereby in a position of fear because he has no reasonable basis for knowing he cannot be shot.[2]

Affirmed.

PETRIE, C.J., and REED, JJ., concur.

Petition for rehearing denied January 22, 1976.

Review denied by Supreme Court March 16, 1976.

---

[1]We need not reach the issue of use of a gun or starter pistol as a bludgeon. This question has been resolved in other jurisdictions, *e.g., United States v. Prater*, 462 F.2d 292 (D.C. Cir. 1972); *State v. Gregory*, 108 Ariz. 445, 501 P.2d 387 (1972); *People v. Raner*, 86 Cal. App. 2d 107, 194 P.2d 37 (1948).

[2]*Accord, Harris v. United States*, 333 A.2d 397 (D.C. App. 1975); *see Jackson v. State*, 231 Md. 591, 191 A.2d 432 (1963).