[No. 45509. En Banc. January 5, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES
THOMAS FOSTER, *Appellant*.

*Richard A. Hansen* of *Seattle–King County Public Defender Association,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Ronald H. Clark, Senior Deputy,* for respondent.

HAMILTON, J.—Appellant was convicted of second–degree assault pursuant to RCW 9A.36.020(1).[1] The jury also found that the appellant was armed with a firearm at the

---

[1]RCW 9A.36.020 provides:

time of the offense. In this appeal, appellant challenges the conviction and sentence on a number of grounds. We find all of appellant's arguments to be without merit. Therefore, we affirm the judgment and sentence.

The facts of this case can be summarized as follows:

Appellant became friends with the sisters, Terry and LaSandra Kelly, who were his next door neighbors at his apartment house. He briefly dated Terry without knowledge that she was already involved in a relationship with one Melvin Colvin. Colvin was a large man; appellant was small in stature. Terry never told Colvin about her relationship with appellant. When he found out, he became angry and jealous.

Appellant visited Terry one evening while Colvin was present. Colvin became enraged, knocked appellant down and assaulted him with a butcher knife. Appellant left, and returned with a shotgun, stating, "I will kill that boy."

The next time appellant encountered Colvin was when he visited Terry's sister LaSandra without knowing that Colvin was in another room with Terry. Colvin insisted that Terry tell appellant to leave, but she refused. Colvin then knocked appellant down and held him on the floor while he struck him in the face repeatedly with a closed fist. He then pulled appellant into the hallway and struck him again knocking his head against the wall. Appellant was taken to a hospital for treatment. Despite the beating which appellant received from Colvin, appellant was uncooperative

---

"(1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:

"(a) With intent to injure, shall unlawfully administer to or cause to be taken by another, poison or any other destructive or noxious thing, or any drug or medicine the use of which is dangerous to life or health; or

"(b) Shall knowingly inflict grievous bodily harm upon another with or without a weapon; or

"(c) Shall knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm; or

"(d) Shall knowingly assault another with intent to commit a felony; or

"(e) With criminal negligence, shall cause physical injury to another person by means of a weapon or other instrument or thing likely to produce bodily harm.

"(2) Assault in the second degree is a class B felony."

with the police and stated to them several times that he would take care of Colvin himself.

After appellant was released from the hospital, LaSandra Kelly told appellant that a gun was kept in the apartment where she and Terry lived. This was not true. Appellant testified, however, that he thought such a gun existed and believed Colvin had access to the gun. Furthermore, a friend of appellant told him that she had seen Colvin carrying a gun in a shoulder holster. Subsequent to his release from the hospital, appellant obtained and began carrying a pistol. There is dispute as to whether appellant started carrying the gun before or after he learned that Colvin might carry a gun.

Approximately 1 week after the altercation, appellant was leaving his apartment when he encountered Colvin and Terry Kelly coming up the steps toward him. According to appellant's testimony, Colvin said something to Terry, pushed her aside, and reached inside his coat. Appellant testified he thought Colvin was reaching for a gun and, remembering Colvin's previous attack, panicked, pulled out his gun, and fired wildly. Colvin received two gunshot wounds but survived the attack.

Appellant's version of the shooting incident is in conflict with other evidence presented at trial. For example, in addition to his statement to officers that he would take care of Colvin, there is evidence that immediately prior to the shooting, appellant said to Colvin, "[D]o you remember what you did?" Colvin had not reached inside his coat prior to the attack. Appellant admits that he saw no weapon in the possession of Colvin prior to commencing his shooting.

Appellant was originally charged with second–degree assault, and the information was later amended to charge first–degree assault with intent to kill, pursuant to RCW 9A.36.010(1)(a). Both informations alleged the use of a firearm. Appellant moved to dismiss the firearm allegation on the ground that it is inconsistent to enhance the penalty based upon use of a firearm when the crime itself requires the use of a firearm. The motion was denied.

At trial, the prosecution proceeded on the theory of intentional assault, and appellant presented evidence to support his claim that he acted in self–defense. In defense to the charge that he intended to kill the alleged assault victim, he testified repeatedly that he feared for his life when he saw Colvin reach inside his coat and that he fired the gun wildly with his eyes closed due to his panic.

At the close of the evidence, the trial court gave a jury instruction including the elements of second–degree negligent assault under RCW 9A.36.020(1)(e).[2] This instructional inclusion was given over appellant's objection that he was given insufficient notice of the potential inclusion of this facet of assault in the second degree, and that the criminal negligence statute was unconstitutional.

The jury found appellant not guilty of first–degree assault, but guilty of assault in the second degree. The jury also found that appellant was armed with a firearm at the time of the offense. Appellant was sentenced to prison for a maximum of 10 years with a mandatory minimum sentence of 7 1/2 years in accordance with the firearm finding. RCW 9.41.025.[3]

---

[2]The trial court, in the same instruction, incorporated as alternative methods of committing the offense of second–degree assault those spelled out in RCW 9A.36.020(1)(b) and (c). The jury verdict did not specify upon which alternative it found appellant guilty, except to note in its special finding that he was, at the time of the offense, armed with a firearm.

[3]RCW 9.41.025 provides, in part:

"Any person who shall commit or attempt to commit any felony, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

". . .

"(2) For a second offense, or if, in the case of a first conviction of violation of any provision of this section, the offender shall previously have been convicted of violation of the laws of the United States or of any other state, territory or district relating to the use or possession of a firearm while committing or attempting to commit a crime, the offender shall be guilty of a felony and shall be imprisoned for not less than seven and one–half years, which sentence shall not be suspended or deferred;"

## I

Appellant asserts that the trial court erred in instructing the jury on second–degree negligent assault, as set forth in RCW 9A.36.020(1)(e), when appellant was brought to trial under an information charging him with first–degree assault with intent to kill. He contends that he could only be convicted of second–degree negligent assault if it were a lesser included offense of assault in the first degree. We disagree with this contention.

Appellant bases this claim of error on Const. art. 1, § 22 and the sixth amendment to the United States Constitution. Both of these provisions confer upon a defendant the right to be informed of the nature and cause of the accusation against him. *State v. Frazier,* 76 Wn.2d 373, 456 P.2d 352 (1969).

The general rule regarding this right is that the crimes of which a person can be convicted, and those on which a jury is properly instructed, are limited to those which are charged in the information. *State v. Olds,* 39 Wn.2d 258, 235 P.2d 165 (1951); *State v. Galen,* 5 Wn. App. 353, 487 P.2d 273 (1971). There are two recognized exceptions to this rule: (1) where a defendant is convicted of a lesser included offense of the one charged in the information pursuant to RCW 10.61.006; and (2) where a defendant is convicted of an offense which is a crime of an inferior degree to the one charged, pursuant to RCW 10.61.003. *State v. Galen, supra.*

The statute which is dispositive of this issue is RCW 10.61.003, which provides that

> [u]pon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, *and guilty of any degree inferior thereto,* or of an attempt to commit the offense.

(Italics ours.)

It is our opinion that this statute gave appellant sufficient notice that he was subject to a conviction of second–degree negligent assault.

Our decision is consistent with the approach taken in *Salinas v. United States*, 277 F.2d 914 (9th Cir. 1960), in which the United States Court of Appeals for the Ninth Circuit considered a similar issue in the context of a due process challenge. In that case, the defendant was charged with arson in the first degree but was found innocent of that crime and was convicted of arson in the second degree. The case proceeded pursuant to Alaskan law. An Alaskan statute similar to RCW 10.61.003 provided that a defendant could be found guilty of a lower degree of the crime charged. The court stated that when an indictment charges a crime in which a lesser offense is necessarily included, or *charges a higher degree of a particular offense that is divided into degrees,* the accused may, consistent with the requirements of due process, be convicted of a lesser included offense or a lower degree of the offense charged. The *Salinas* court viewed the statutes in issue, *i.e.,* first- and second–degree arson statutes, "as commonly denouncing but one crime—that of arson." *Salinas,* at 918.

Similarly, we conclude that both the first–degree and second–degree assault statutes proscribe but one offense— that of assault. Since the offense upon which the trial court instructed the jury is a lesser degree crime of the one with which he was charged and the two crimes, namely assault, are not separate and distinct from one another, we conclude that appellant was given sufficient notice to satisfy the requirements of Const. art. 1, § 22 and the Sixth Amendment.

Appellant next contends that he was not given sufficient notice that the jury would be instructed on the charge of negligent assault, and therefore he was wrongfully led to waive his privilege against self–incrimination as guaranteed by the fifth amendment to the United States Constitution. Appellant argues that he gave the testimony that he fired wildly at Colvin in order to defend himself from the charge of first–degree assault with intent to kill. He alleges that he would not have given this testimony had he known that the

jury would be instructed on second–degree negligent assault.

■ The fifth amendment to the United States Constitution states in part that "[no person] shall be compelled in any criminal case to be a witness against himself . . ." This right has been incorporated into the due process clause of the Fourteenth Amendment and therefore binds the state. *Malloy v. Hogan,* 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964). Further, the state constitution contains a similar provision, which states in part that "[n]o person shall be compelled in any criminal case to give evidence against himself . . ." Const. art. 1, § 9. This court has held that the two provisions should be given the same interpretation. *State v. Mecca Twin Theater & Film Exch., Inc.,* 82 Wn.2d 87, 507 P.2d 1165 (1973); *State v. Moore,* 79 Wn.2d 51, 483 P.2d 630 (1971). The term "compelled" has been held to connote that the accused was forced to testify against his will, and that testimony was exacted under compulsion and over his objection. *State v. Van Auken,* 77 Wn.2d 136, 460 P.2d 277 (1969).

We reject appellant's Fifth Amendment challenge insofar as it is predicated on his contention that he was without notice of the charge of which he was convicted. However, we further note that there is no evidence of compulsion to testify in this case; rather, the record reflects that the defendant voluntarily testified in seeking to exculpate himself. Appellant was represented at trial by counsel and made the tactical decision to testify. We therefore find his Fifth Amendment challenge to be without substantive merit.

## II

Appellant contends that the criminal negligence statute upon which the jury was instructed is unconstitutional. He attacks the statute on three grounds. We find each of these arguments to be unconvincing.

First, appellant argues that the definition of criminal negligence is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment. RCW

9A.36.020(1)(e) incorporates the definition of criminal negligence found in RCW 9A.08.010(1)(d):

> (d) *Criminal negligence.* A person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation.

■ The constitutional rules for vagueness are set forth in *State v. Carter,* 89 Wn.2d 236, 240, 570 P.2d 1218 (1977):

> The requirement that criminal legislation be definite in language is premised on two considerations. First, the statute must provide fair notice, measured by common practice and understanding, of that conduct which is prohibited, so that persons of reasonable understanding are not required to guess at the meaning of the enactment. Second, the statute must contain ascertainable standards for adjudication so that police, judges, and juries are not free to decide what is prohibited and what is not, depending on the facts in each particular case. *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975); *Blondheim v. State,* 84 Wn.2d 874, 529 P.2d 1096 (1975).

■■ We do not, as appellant would have us do, look at the definition of criminal negligence standing alone. In a vagueness challenge, we do not analyze portions of a statute in a vacuum. Rather, as was done in *Carter,* we look to the statutory setting of the challenged provision to determine whether the provision is so vague as to deny due process. In this case, the definition of criminal negligence must be examined in the context of RCW 9A.36.020(1)(e) into which it is incorporated. That subsection provides:

> (1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:
>
> . . .
>
> (e) *With criminal negligence, shall cause physical injury* to another person by means of a weapon or other instrument or thing likely to produce bodily harm.

(Italics ours.)

Viewing the definitional section and RCW 9A.36-.020(1)(e) in their entirety, we find that the criteria stated in *Carter* are satisfied.

 Next, appellant contends that the criminal negligence provision is unconstitutional because it eliminates the element of intent. He argues that the element of intent in criminal statutes is required by the due process clause of the Fourteenth Amendment. He cites *Morissette v. United States,* 342 U.S. 246, 250, 96 L. Ed. 288, 72 S. Ct. 240 (1952), as support for his contention. Appellant's reliance on *Morissette* is misplaced, however, since that case involved an issue of statutory interpretation rather than one of constitutional interpretation. We find no persuasive authority for appellant's argument that all statutory offenses other than mala prohibita offenses must, in every instance, contain a legislatively designated element of intent.

We have heretofore held that, pursuant to the manslaughter statute, a conviction for manslaughter may be based on a negligent act or omission. *State v. Hedges,* 8 Wn.2d 652, 113 P.2d 530 (1941); *State v. Williams,* 4 Wn. App. 908, 484 P.2d 1167 (1971).

We fail to find a denial of due process here.

Appellant's last constitutional challenge runs to RCW 9A.36.020 as a whole. It is that the statute violates equal protection by giving the prosecutor unbridled discretion to choose among different burdens of proof to establish the single offense of second–degree assault. Appellant points out that RCW 9A.36.020 defines five modes of committing the offense, all of which have the same penalty. RCW 9A.36.020(1)(a)–(d) require proof of a knowing or intentional assault. Only RCW 9A.36.020(1)(e) provides for criminal negligence as the element of intent.

In his challenge to this statute, appellant relies upon *State v. Collins,* 55 Wn.2d 469, 348 P.2d 214 (1960). In *Collins,* this court affirmed the dismissal of a manslaughter prosecution where a defendant who killed a pedestrian by automobile was charged under a manslaughter statute as

opposed to the negligent homicide statute which gave the prosecution a higher burden of proof. In *Collins,* we reached this conclusion on grounds of statutory construction. We, however, stated in dicta that in charging a defendant, it is inconsistent with equal protection for a prosecutor to elect among different statutes defining different offenses, each of which carries a different burden of proof.

■ Appellant's argument based on *Collins* fails because, unlike the statutes involved in *Collins,* the subsections of the statute in question here do not on their face impose different burdens of proof for the same act. The elements of the subsections may seemingly differ, but they nevertheless proscribe the same offense, *i.e.,* assault in the second degree, with that offense's criminal overtones.

The fact that defendant's conduct could have been prosecuted under alternative subsections due to the facts of his case does not lead to the conclusion that the statutory scheme gives the prosecutor unbridled discretion to choose among subsections. What we said in *State v. Reid,* 66 Wn.2d 243, 248, 401 P.2d 988 (1965), is applicable here:

> A defendant's constitutional right to equal protection of the laws is not violated by the prosecutor's exercising a discretion in deciding to prosecute or not to prosecute violation of a criminal statute. The fact that this discretion extends to two or more crimes (instead of only one) does not convert this discretion into an unconstitutional delegation of legislative authority, or constitute a denial of the equal protection of the laws, even though the facts to be proven are very similar, and arise from different parts of the same series of actions by the accused defendant.

*See also State v. Devine,* 84 Wn.2d 467, 527 P.2d 72 (1974). Accordingly, we reject appellant's equal protection challenge.

## III

Appellant's third assignment of error is leveled against the application of RCW 9.41.025 to his conviction for second–degree assault. As noted above, the trial court sentenced the appellant to a 7 1/2–year term pursuant to RCW 9.41.025 in accordance with the firearm finding. Appellant's challenge is based on both statutory and constitutional grounds. We do not find either argument to be persuasive.

First, appellant contends that by its own terms RCW 9.41.025 does not apply to conviction for offenses which require the use of a deadly weapon or firearm as a necessary element of the offense. RCW 9.41.025 states, in part:

> Any person who shall commit or attempt to commit any felony . . . while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute *for the crime committed without use or possession of a firearm,* be imprisoned as herein provided:

(Italics ours.)

Had appellant been convicted of assault in the first degree under RCW 9A.36.010(1)(a), this contention might have merit. However, he was not so convicted, and we reject his challenge because the use of a deadly weapon or firearm is not a necessary element of the crime of second–degree assault as defined in RCW 9A.36.020. *See State v. Jackson,* 70 Wn.2d 498, 424 P.2d 313 (1967); *State v. Curtis,* 14 Wn. App. 735, 544 P.2d 768 (1976). This conclusion is consistent with our holding in *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978), in which we held that RCW 9.41.025 could not be applied so as to impose an additional penalty to a conviction for first–degree robbery, which contains the element of possession of a *deadly weapon.* In *Workman,* we recognized that a firearm is considered a deadly weapon under RCW 9A.04.110. We concluded that since possession of a deadly weapon was an element of first–degree robbery, the penalty for the robbery already took that aggravating

factor into account. Since the second–degree assault statute, unlike the first–degree robbery statute in *Workman,* calls for no necessary proof of possession of a deadly weapon as an element of the crime, we find that the application of the firearm enhancement statute in this case was proper.

Second, appellant contends that application of the firearm enhancement statute is violative of his rights under the double jeopardy clause of the fifth amendment to the United States Constitution. To support this contention, appellant cites *North Carolina v. Pearce,* 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), in which the United States Supreme Court stated that the Fifth Amendment "protects against multiple punishments for the same offense." Neither *Pearce* nor the cases cited within it to support this cited proposition are apposite to the challenged statutory scheme which provides for *enhanced* penalty based on the existence of an additional factor—the use of a firearm. In a recent case which presented a double jeopardy challenge to a federal statute imposing an additional penalty for the use of a firearm while committing a felony, the United States Supreme Court expressly declined to reach the constitutional issue. *See Simpson v. United States,* 435 U.S. 6, 55 L. Ed. 2d 70, 98 S. Ct. 909 (1978). We are aware of no authority which supports appellant's claim of double jeopardy for this type of enhanced penalty scheme.

This court has upheld the constitutionality of another enhanced penalty statute, RCW 9.92.090, in ruling that the enhanced penalty for habitual criminals does not violate a defendant's rights under the double jeopardy clause of the Fifth Amendment. *See State v. Le Pitre,* 54 Wash. 166, 103 P. 27 (1909). *See also State v. Braithwaite,* 18 Wn. App. 767, 572 P.2d 725 (1977); *State v. Williams,* 9 Wn. App. 622, 513 P.2d 854 (1973). We take a similar view of the enhanced penalty scheme provided for in RCW 9.41.025. We therefore deny appellant's double jeopardy claim.

## IV

Appellant's last assignment of error deals with the trial court's instructions to the jury on self–defense as stated in instruction No. 14.[4] Appellant claims that the trial court: (1) gave erroneous and confusing instructions on self–defense; (2) instructed the jury on exceptions to the self–defense doctrine that were not supported by the evidence; and (3) unconstitutionally commented on the evidence of

[4] "It is a defense to the charge of assault that the assault was justified, committed in self–defense, as defined in these instructions.

"Assault is justified when committed by a party about to be injured in preventing or attempting to prevent an offense against his person, if the force he used is not more than was necessary. Necessary means no reasonable effective alternative to the use of force appeared to exist and that the amount of force used was reasonable to effect the lawful purpose intended.

"The kind and degree of force which a person may use in self–defense is limited to what a reasonably and ordinarily cautious and prudent person in the same situation as the defendant, seeing what he sees and knowing what he knows, would honestly believe to be necessary. One has the right to defend himself, to resist force, or apparent force, with force, to the extent of what appears to be the apparent danger to him at the time. However, when there is no reasonable ground for the person attacked or apparently under attack to believe that his person is in imminent danger of death or great bodily harm, and it appears to him that only an ordinary battery is all that is intended and all that he has reasonable grounds for fear from his assailant, he has a right to stand his ground and repeal such a threatened assault. Yet, he has no right to repel a threatened assault by the use of a deadly weapon in a deadly manner, unless at the time of the alleged or apparent attack upon him he could as a reasonably and ordinarily prudent man, have honestly believed that he was in danger of death or great bodily harm. In deciding whether a person had reasonable ground to apprehend imminent death or grievous bodily harm, you should judge from his standpoint at the time of the occurrence; that is to say, you should take into consideration all the facts and circumstances bearing on the question and surrounding him and existing at or prior to the time of the occurrence, as said facts and circumstance are described by the evidence.

"Great bodily injury as used in this instruction means injury of a graver and more serious nature than an ordinary battery with a fist or pounding with the hand; it is an injury of such nature as to produce severe pain, suffering and injury.

"No man can by his own lawless acts create a necessity for acting in self–defense. One who initially is an aggressor or who provoked the altercation cannot invoke the doctrine of self–defense to justify the use of force unless in good faith he sought to withdraw from and abandon the conflict prior to his use of force.

"An assault is not justified when made for the purpose of avenging insults, abuse or a previous assault which has ended or for the purpose of settling an argument not involving physical safety." Instruction No. 14.

self–defense. Each of these claims is considered individually.

First, appellant claims that the court's instruction misstates the law. Appellant argues that the court erred by giving the following sentence within the second paragraph of the instruction:

Assault is justified when committed by a party about to be injured in preventing or attempting to prevent an offense against his person, if the force he used is not more than was necessary.

Appellant argues that the court improperly used the word "offense" in this sentence, since no *criminal* offense by the victim need be proved in order for the doctrine of self–defense to apply. Although appellant objected to this portion of the instruction on other grounds, he did not raise this point at trial, and we do not consider it here.

In regard to the same sentence, appellant next argues that the trial court misled the jury by its use of the word "assault" at the beginning of the sentence. He claims that it makes no sense to say an "assault" is justified, because assault is by definition a crime and self–defense is a complete defense.

Aside from the fact that we discern no significant merit in appellant's contention, we do not believe that this sentence within the instruction was misleading in light of the axiom that instructions be read as a whole. *See State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968); *Roberts v. Goerig,* 68 Wn.2d 442, 413 P.2d 626 (1966). If instructions are such as are readily understood and not misleading to the ordinary mind, they are sufficiently clear. *State v. Ferrick,* 81 Wn.2d 942, 506 P.2d 860 (1973). *State v. Dana, supra.* A further test of sufficiency is whether, from the instructions given, counsel may satisfactorily argue his theory of the case to the jury. *State v. Dana, supra; State v. Long,* 19 Wn. App. 900, 578 P.2d 871 (1978). Applying these criteria, we find the challenged portion of the instruction to be without prejudice.

Appellant also asserts that the use of the word "repeal" as opposed to "repel" in paragraph 3 of instruction No. 14 was misleading and erroneous. Again, we find no objection to this on the record, and we do not consider the assignment error here.

Appellant claims that paragraph 5 of instruction No. 14 was erroneously given because it was not supported by the evidence. That paragraph states:

> No man can by his own lawless acts create a necessity for acting in self–defense. One who initially is an aggressor or who provoked the altercation cannot invoke the doctrine of self–defense to justify the use of force unless in good faith he sought to withdraw from and abandon the conflict prior to his use of force.

We find substantial evidence in the record flowing from the conflicting versions as to what occurred at the time of the shooting to support a finding that appellant was an aggressor at the time of the incident. The instruction, therefore, substantially conforms to the evidence. To the extent the instruction might arguably be considered over broad, we find no prejudice to appellant.

Finally, appellant claims that paragraph 4 of instruction No. 14 constituted an impermissible comment on the evidence in violation of Const. art. 4, § 16. This constitutional provision prohibits a judge from conveying to the jury his personal attitudes toward the merits of the cause. *See State v. Cerny*, 78 Wn.2d 845, 480 P.2d 199 (1971). The challenged paragraph states:

> Great bodily injury as used in this instruction means injury of a graver and more serious nature than an ordinary battery with a fist or pounding with the hand; it is an injury of such nature as to produce severe pain, suffering and injury.

This same language has been viewed as an accurate statement of the law in other cases. *See State v. Bezemer*, 169 Wash. 559, 14 P.2d 460 (1932); *State v. Lewis*, 6 Wn. App. 38, 491 P.2d 1062 (1971). Accordingly, we do not view

this instruction as one which conveys the court's attitude toward the merits of this particular case.

For these reasons, we affirm the trial court's judgment of conviction and sentence.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied March 15, 1979.