FILED
4/21/2025
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHANMALATY TOUCH,<br><br>Appellant,<br><br>v.<br><br>WASHINGTON STATE GAMBLING COMMISSION,<br><br>Respondent. | No. 86223-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — During the administrative hearing, in which the Washington State Gambling Commission sought to revoke Chanmalaty Touch's public card room employee license, technology issues caused two days of the recorded hearing to be lost. Rather than declare a mistrial and repeat the entire hearing, the Administrative Law Judge (ALJ) opted to redo the argument and testimony from the lost days.

Touch now asserts that the ALJ's decision to redo the missing testimony violated her right to due process and that the statute under which her license was revoked is unconstitutionally vague. Because Touch fails to demonstrate any error, we affirm the Gambling Commission's revocation of her license.

I

Beginning in 1999, Touch was licensed by the Gambling Commission as a Public Card Room Employee. In 2021, Touch was employed as a licensed dealer

at Riverside Casino in Tukwila, Washington. Touch dealt multiple card games at Riverside Casino, including Pai Gow, baccarat,[1] and Spanish 21.

Mini-baccarat is a card game in which two hands, referred to as the "Player" hand and the "Banker" hand, are dealt onto the table from a multi-deck shoe. Before the cards are dealt, players may bet on Player, Banker, or "Tie." The baccarat table has multiple wagering areas and players may place a bet in any number of areas. All winning Player and Banker bets are paid on a 1 to 1 basis, or "even money." At the Riverside Casino, bets are conducted using $100 chips.

On August 2, 2021, at approximately 10:30 a.m., Sophiphal "Sophie" Chann began dealing Dragon Bonus Mini-Baccarat at table 11 in the Riverside Casino. Touch was seated at Table 11 as a player. Touch and Chann are friends and often gamble together.

At 10:44 a.m., Touch placed $300 bets on spots 3 through 8.[2] Touch won the bet, and Chann overpaid Touch by one $100 chip on spots 3, 5, 6, and 7. At 10:48 a.m., Touch again placed $300 bets on spots 3 through 8. Touch won the bet, and Chann overpaid Touch by one $100 chip on spots 5, 6, and 7. At 10:52 a.m., Touch placed $300 bets on spots 5 through 8, won the bet, and was overpaid by one $100 chip on spots 5, 6, and 7. Chann moved to deal at table 10 at 11:00 a.m. Touch also moved to Table 10 to continue playing. At 11:01 a.m., Chann overpaid Touch by one $100 chip on spots 5, 6, 7, and 8. In total, Touch was overpaid by $1,400. In subsequent playing, Touch lost these overpayments back

---

[1] We refer to baccarat and mini-baccarat interchangeably. The rules of these games do not differ in any respect material to this appeal.
[2] The mini-baccarat tables at Riverside Casino do not have a spot 4.

to the casino, such that the parties agree the casino ultimately suffered no actual loss.

Another dealer at Riverside Casino, Yin Zhen "Jane" Huang, witnessed the overpayments from a nearby table. Huang reported the incidents to the floor supervisor. Later that same day, Surveillance Manager Richard Stroud reviewed surveillance video of the incidents. Stroud contacted Steve Martin, director of surveillance for Evergreen Gaming,[3] who then went to Riverside Casino and reviewed the video as well.

Stroud and Martin alerted the Gambling Commission, which began an investigation into the matter. As part of his investigation, Special Agent Jess Lohse reviewed the surveillance video and interviewed multiple casino employees.

Following its investigation, the Gambling Commission served Touch with a notice of administrative charges, notifying her that it intended to revoke her license. The Gambling Commission alleged that Touch had committed theft in the second degree in violation of RCW 9A.56.040(1)(a), cheating in the first degree in violation of RCW 9.46.1961, and fraud in violation of RCW 9.46.190(1), (3). The Gambling Commission also asserted that Touch had exercised unauthorized control over the property of another and her license could be revoked under RCW 9.46.075(1). Finally, the Gambling Commission asserted that Touch was no longer qualified for licensure under RCW 9.46.153. Touch requested a hearing on the proposed license revocation.

---

[3] Evergreen Gaming was the owner of Riverside Casino.

3

The administrative hearing was initially conducted on March 30 and 31, 2022. The parties were unable to complete the hearing in the two days that had been scheduled for it, and the matter was continued to July. In the interim, the administrative law judge (ALJ) discovered that the recording from March 30 had been lost due to a software malfunction. The contents of the lost recording included the Gambling Commission's opening statement, the testimony of Huang, and the testimony of Stroud. The ALJ proposed that they redo the lost argument and testimony while the hearing was still ongoing. Both parties agreed to the ALJ's proposal.

The second part of the hearing was conducted on July 25-27, 2022. The parties were again unable to complete the hearing within the allotted time and continued the matter to September 16. However, the recording of the morning session of July 27 was lost due to another technological malfunction. The contents of the lost recording included Touch's opening statement, the testimony of Daniel Ohashi, a longtime acquaintance of Touch, and part of the testimony of Hector Enriquez, former general manager of Riverside Casino.

Touch moved for a mistrial. The ALJ was unsure whether he possessed the authority to declare a mistrial and asked the parties to submit written briefing on the issue. After considering the parties' submissions, the ALJ concluded that he lacked the authority under the Administrative Procedures Act (APA), chapter 34.05 RCW, to order a mistrial. Accordingly, the ALJ denied the motion.

Ohashi and Enriquez testified again on October 11, 2022. Enriquez left at approximately 1:00 p.m., before his testimony was complete. The hearing was

4

continued to October 24, 2022 to complete Enriquez's testimony and cross-examination. However, Enriquez failed to appear on October 24. Touch moved to have the matter dismissed due to the alleged prejudice suffered by the loss of Enriquez's July 27 testimony and his current failure to appear. The ALJ denied the motion on the basis that the technological irregularities had affected both parties.

Following the hearing, the ALJ issued an initial order detailing his findings of fact and conclusions of law. The ALJ concluded that the Gambling Commission had not met its burden to prove that Touch committed theft in the second degree, cheating in the first degree, or fraud, nor did the Gambling Commission meet its burden to prove that Touch had unauthorized control over the property of another. The ALJ so concluded because the Gambling Commission had not presented evidence that Touch knew she had been overpaid. However, the ALJ concluded that Touch did not prove by clear and convincing evidence that she continued to be qualified for licensure. The ALJ determined,

> Here, Ms. Touch must establish it to be highly probable that she is honest and competent. Thus, she must establish that it is highly probable that a dealer with over twenty years of experience dealing card games, including mini-baccarat, and substantial experience playing mini-baccarat and other games, managed without realizing it to acquire $1400 of overpayments on four hands in less than half an hour. I am not persuaded that Ms. Touch has established that by clear and convincing evidence given the record in this hearing.

Touch petitioned for review to the Gambling Commission. In support of her petition, Touch attempted to introduce multiple documents that were not part of the evidence before the ALJ. The commissioners struck the new documents, denied the petition and adopted the ALJ's order in full. Touch moved for reconsideration

5

and again submitted new documents not part of the evidence before the ALJ. The commissioners denied the motion.

Touch then appealed to the superior court. The superior court certified the matter to the Court of Appeals for review.

II

Our review of a decision issued by the Gambling Commission is governed by the APA. RCW 34.05.570. Both the superior court and this court sit in the same position as an appellate court. Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 244, 350 P.3d 647 (2015). We review the decision of the commissioner rather than the ALJ, except to the extent that the commissioner adopted the ALJ's findings and conclusions. See id.

"We consider a Commissioner's decision to be prima facie correct and the 'burden of demonstrating the invalidity of agency action is on the party asserting invalidity.' " Smith v. Emp't Sec. Dep't, 155 Wn. App. 24, 32, 226 P.3d 263 (2010) (quoting RCW 34.05.570(1)(a); citing Anderson v. Emp't Sec. Dep't, 135 Wn. App. 887, 893, 146 P.3d 475 (2006)). A decision is invalid if it is based on an error of law, if substantial evidence does not support the decision, or if it was arbitrary and capricious. Smith, 155 Wn. App. at 32 (citing RCW 34.05.570(3)(d), (e), (i)).

A

Touch first asserts that the ALJ's decision to redo the argument and testimony from the lost recordings constituted a violation of her right to due process. The Gambling Commission contends that Touch received all the process she was due and that the issue of how to address the lost recordings was a matter

6

of discretion. We agree with the Gambling Commission that Touch fails to demonstrate a due process violation.

A professional license is a property interest for which revocation requires procedural due process. Hardee v. Dep't of Soc. & Health Servs., 172 Wn.2d 1, 8-9, 256 P.3d 339 (2011) (citing Haley v. Med. Disciplinary Bd., 117 Wn.2d 720, 732, 818 P.2d 1062 (1991); Bang D. Nguyen v. Dep't of Health Med. Quality Assur. Comm'n, 144 Wn.2d 516, 518, 29 P.3d 689 (2001)). Procedural due process entitles a party to notice and opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 332-33, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

"To establish a procedural due process violation, the party must establish that he or she has been deprived of notice and opportunity to be heard prior to a final, not tentative, determination." Motley-Motley, Inc. v. Pollution Control Hr'gs Bd., 127 Wn. App. 62, 81, 110 P.3d 812 (2005). An abnormality in the procedure does not, by itself, establish a procedural due process violation; rather, the challenging party must demonstrate prejudice as a result of the abnormality. Id. (citing Pullman Power Prods., Inc. v. Marshall, 655 F.2d 41, 44 (4th Cir. 1981)). Touch does not do so.

The APA requires that the agency maintain an official record of each administrative proceeding, to include "[t]he recording prepared for the presiding officer at the hearing, together with any transcript of all or part of the hearing considered before final disposition of the proceeding." RCW 34.05.476(2)(h). Here, the ALJ recorded all of the hearing, but two days' worth of recordings were

7

lost due to technological malfunctions. The ALJ opted to redo the argument and testimony from the missing days in order to have a complete record for review.

Touch asserts that she was prejudiced by the ALJ's decision to redo testimony in the following ways: (1) because the Gambling Commission's counsel was able to make new objections based on what it had already heard, (2) it created confusion and led to her counsel forgetting to continue cross-examination of a witness, and (3) it forced her to present her defense in a non-linear, and therefore less effective, manner. Touch claims that this gave the Gambling Commission an unfair advantage during the proceedings.[4] This argument ignores the fact that the first lost recording consisted entirely of the Gambling Commission's presentation of its case, including its opening statement and the testimony of two of its witnesses.[5] All of the difficulties that Touch experienced were also experienced by the Gambling Commission: it needed to present its case in a non-linear fashion with its opening statement coming after two full hearing days and it needed to present testimony that Touch had already heard. The Gambling Commission also had to waive cross-examination of one witness after he failed to return to complete his re-recorded testimony. The ALJ recognized the detriment to both parties when he denied Touch's motion for a mistrial.

The record also does not support Touch's assertion that a partial redo of the hearing created confusion or caused her counsel to forget to cross-examine a

---

[4] Touch also asserts that the ALJ was "partially focused on trying to 'imitate' the prior days of lost testimony" rather than focused on the merits of the case. This appears to be speculation, as it is unaccompanied by any citation to the record.

[5] Touch had no objection to the ALJ's decision to redo the argument and testimony from the first lost recording.

witness. Neither party expressed any such confusion on the record. To the contrary, both parties initially agreed to redo part of the hearing.

Further, Touch fails to articulate how the alleged prejudice caused by the ALJ's decision to redo two days of testimony is any different from the consequences of the alternative. Had the ALJ agreed to vacate the current proceedings, the relief granted would have been a new administrative hearing, not dismissal of the citation as Touch requested. See In re Welfare of M.B., 195 Wn.2d 859, 877, 467 P.3d 969 (2020) (remedy for violation of procedural due process is "reversal and remand for proceedings with constitutionally adequate procedures"). Had this occurred, the Gambling Commission similarly would have had a preview of Touch's evidence by virtue of the vacated proceedings. Additionally, there would be no guarantee that Touch could present her case in the precise order she wanted, given the possible limitations on the availability of witnesses and interpreters.

Although the procedure employed by the ALJ to account for the missing recordings was a response to the unexpected loss of the original recordings, it was by no means unprecedented. Outside the context of administrative law, the re-creation of the record is not only contemplated, but expressly permitted by court rule. RAP 9.3 and 9.4 provide for the reconstruction of a report of proceedings by one or both of the parties if it is discovered on appeal that the trial recording has been lost. The court deemed this constitutionally permissible in State v. Classen, 143 Wn. App. 45, 57-58, 176 P.3d 582 (2008), after three days of recordings from a criminal trial were lost.

Other states have employed similar procedures. In <u>Evans v. Fran-Char Corp.</u>, 45 N.C. App. 94, 94, 262 S.E.2d 381 (1980), North Carolina's Employment Security Commission lost the recording of the claimant's administrative hearing. The agency notified the parties that they would have to recreate all of the testimony before it would review the initial order. <u>Id.</u> at 95. The claimant alleged that this procedure violated his right to due process. <u>Id.</u> The North Carolina Court of Appeals rejected this argument, holding instead that the agency's decision to hear the testimony again did not cause any prejudice to the claimant and thus did not violate any of his substantial rights. <u>Id.</u> at 95-96.

Although the re-creation of testimony following loss of a recording due to technological malfunction presents some challenges, those challenges do not, in and of themselves, amount to a violation of the right to procedural due process. Touch received both notice and an opportunity to be heard. Accordingly, reversal is not warranted.

Touch also asserts that the redo of the missing days of testimony constitutes an unlawful procedure under the APA. Touch neither argues nor cites any authority in support of this assertion. We therefore decline to consider it. <u>See State v. Patterson</u>, 37 Wn. App. 275, 279, 679 P.2d 416 (1984) ("Assignments of error unsupported by citation of authority will not be considered on appeal unless well taken on their face.") (citing <u>State v. Kroll</u>, 87 Wn.2d 829, 838, 558 P.2d 173 (1976)).

B

Touch next asserts that RCW 9.46.153(1) is unconstitutionally vague and therefore cannot be the basis for revocation of her license. The Gambling Commission contends that the statute is not unconstitutionally vague and that Touch does not apply the correct standard to questions of vagueness. We agree with the Gambling Commission.

"The constitutionality of a statute . . . is an issue of law, which we review de novo." Kitsap County v. Mattress Outlet, 153 Wn.2d 506, 509, 104 P.3d 1280 (2005) (citing Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 114, 937 P.2d 154, 943 P.2d 1358 (1997)). Statutes are presumed to be constitutional, and the party challenging the statute has the burden to prove vagueness beyond a reasonable doubt. Haley v. Med. Disciplinary Bd., 117 Wn.2d 720, 739, 818 P.2d 1062 (1991) (citing Seattle v. Eze, 111 Wn.2d 22, 26, 759 P.2d 366 (1988); State v. Maciolek, 101 Wn.2d 259, 263, 676 P.2d 996 (1984)). "In a vagueness challenge, we do not analyze portions of a statute in isolation from the context in which they appear." Id. at 741 (citing State v. Foster, 91 Wn.2d 466, 474, 589 P.2d 789 (1979)).

RCW 9.46.153(1) states that

It shall be the affirmative responsibility of each applicant and licensee to establish by clear and convincing evidence the necessary qualifications for licensure of each person required to be qualified under this chapter, as well as the qualifications of the facility in which the licensed activity will be conducted.

Submission of an application for a license permits the Gambling Commission to inquire into the applicant's "general character, integrity and ability to engage or participate in, or be associated with, gambling or related activities impacting this

state." RCW 9.46.153(7). All licensees are subject to ongoing obligations such as the duty to report any suspicious activity and to submit to an inspection upon request. RCW 9.46.153(3), (4). The Gambling Commission may revoke a license "for any reason or reasons, it deems to be in the public interest," including when the licensee "[f]ails to prove, by clear and convincing evidence, that he, she or it is qualified in accordance with the provisions of" chapter 9.46 RCW. RCW 9.46.075(8).

Touch argues that the phrase "necessary qualifications" in RCW 9.46.153(1) is so vague as to be incapable of definition. A similar argument was rejected by this court in Chandler v. Office of the Ins. Comm'r, 141 Wn. App. 639, 173 P.3d 275 (2007). In that case, a licensed insurance agent argued that the word "untrustworthy" as used in RCW 48.17.530(1)(h) was unconstitutionally vague and, therefore, his license could not be revoked under that statute. Chander, 141 Wn. App. at 661. Chandler asserted that the word "untrustworthy" was vague because its definition was purely subjective. Id.

In rejecting Chandler's argument, this court held that

including a vague term in a statute does not necessarily render it impermissibly vague because courts do not analyze statutory words in isolation from the context in which they appear. The common knowledge and understanding of members of a profession can clarify a statutory term, such as untrustworthiness, when no objective standard is provided.

Id. (footnote omitted). This court noted that like terms such as "unfit" and "moral turpitude," what constituted "untrustworthy" conduct was well within the common

knowledge of licensed insurance agents, such that it was "sufficiently clear to put an insurance agent on notice that certain conduct is prohibited." Id.

The legislature has decreed that the public policy of the State "is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control." RCW 9.46.010. The legislature has also decreed that "[a]ll factors incident to the activities authorized in this chapter shall be closely controlled, and the provisions of this chapter shall be liberally construed to achieve such end." Id. To that end, the State created the Gambling Commission to carry out the statutes found in chapter 9.46 RCW and to adopt rules and regulations to effectuate the purposes and provisions of those statutes. RCW 9.46.040, .070.

In accordance with RCW 9.46.070, the Gambling Commission has promulgated rules and regulations governing the conduct of licensees and establishments engaged in gambling activity. See chapter 230-03 WAC. In addition to these general regulations, the Gambling Commission has also promulgated rules and regulations applicable specifically to card games, including baccarat. Chapter 230-15 WAC. Finally, each card game is subject to standardized rules of play. WAC 230-15-065(4).

In light of the tight control the State exercises over the gambling industry through numerous statutes and regulation, what the "necessary qualifications" are for continued licensure is well within the common knowledge of licensed card room employees. As such, it is sufficiently clear to put Touch on notice of her ongoing duties to maintain her licensure. RCW 9.46.153(1) is not unconstitutionally vague.

13

Touch additionally asserts that RCW 9.46.153(1) violates her substantive due process rights and that the Gambling Commission misapplied RCW 9.46.153(1). Touch's argument on both of these issues consists of a single paragraph without citation to any authority and without explanation as to how her claims of error fall within the relevant legal framework. We decline to consider these undeveloped arguments. See Saviano v. Westport Amusements, Inc., 144 Wn. App. 72, 84, 180 P.3d 874 (2008) (Appellate court will "not address issues that a party neither raises appropriately nor discusses meaningfully with citations to authority.") (citing RAP 10.3(a)(6)).

C

Finally, Touch asserts that the Gambling Commission acted unlawfully by intimidating one of her witnesses. Touch's argument on this issue is premised on speculation about counsel's motives, as well as documents that were stricken by the commissioners because they had not been submitted to the ALJ. Touch does not assign error to the commissioners' order striking those documents from the record. We will not consider arguments that are unsupported by the record. See RAP 10.3(a)(6); Okamoto v. Emp't Sec. Dep't, 107 Wn. App. 490, 494, 27 P.3d 1203 (2001) ("Generally, judicial review of an agency action is confined to the agency record.").

III

Touch requests an award of attorney fees pursuant to RCW 4.84.350. RCW 4.84.350(1) states that "a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable

14

attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust." Because Touch is not the prevailing party, she is not entitled to fees under this statute.

Affirmed.

Birk, J.

WE CONCUR:

Feldman, J.                    Díaz, J.