[No. 2803-2.   Division Two.   January 31, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. MARLON
K. STEPHENS, *Appellant*.

*Olson & Pietig* and *Charles T. Althauser,* for appellant (appointed counsel for appeal).

*Jeremy Randolph,* for respondent.

REED, J.—Defendant Marlon K. Stephens appeals from his conviction of second–degree assault. He also challenges the sentence imposed by the trial judge under RCW 9.41-.025, the "firearm statute," as being in excess of statutory authority. We affirm but remand for resentencing.

Complaining witnesses, Richard Heieck and Norman Jahnke, called at the home of Joyce Belcher on October 17, 1976. One of her children answered the door and told the men that she was not at home. Heieck and Jahnke then left the residence; however, they returned 15 minutes later. On their second visit, Jahnke went to the door while Heieck waited in the automobile. The door was opened by the defendant, who told Jahnke to leave. Apparently unbeknownst to Heieck and Jahnke, defendant had moved in with Belcher.

Jahnke returned to the car and told Heieck that defendant had been rude to him. Heieck responded to this information by going to the house, where he met defendant on the front porch. Although defense and prosecution witnesses gave conflicting testimony concerning the interaction between defendant and Heieck, it is clear that at some point Heieck pushed Stephens, and that Stephens reacted by entering the residence and slamming the door.

Hearing what they believed to be the sound of a gun being loaded, Heieck left the porch and headed for the car with Jahnke, who had been standing on the front lawn of the residence. When they were a few feet from the vehicle,

defendant appeared on the porch brandishing a shotgun. Apparently, after telling Heieck and Jahnke to "get the hell out of here," defendant fired the weapon. At the time of the shooting, Heieck was standing near the front door on the driver's side of the vehicle and Jahnke was positioned near the rear tire on the passenger's side. Although the radiator of the car was punctured, neither man was injured.

Heieck and Jahnke reported the incident to the Lewis County Sheriff's Department. Defendant was arrested at Belcher's home later in the day. After being informed of his *Miranda* rights, defendant admitted firing at the vehicle.

The defendant was charged with one count of second-degree assault against Heieck and Jahnke. RCW 9A.36-.020(1)(c). The information also alleged that the crime was committed while defendant was armed with a firearm. RCW 9.41.025(1). The defendant entered a plea of not guilty, contending (1) that he had not intended to assault Heieck and Jahnke, (2) that he acted in self-defense, and (3) that the shooting was justifiable as being in defense of property. A jury trial was held December 9–10, 1976. The jury returned a verdict of guilty on the assault charge, and also found against defendant on the firearm allegation. Defendant moved for a new trial.

The motion was denied and the trial judge sentenced defendant to 10 years on the assault charge; he interpreted RCW 9.41.025(1) as requiring a 20–year maximum on the firearm finding and imposed sentence accordingly to run concurrently with the 10–year term. Defendant appealed.

Defendant's first three assignments of error all involve challenges to instruction No. 6A, which reads in part:

> To convict the defendant of the crime of assault in the second degree each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 17th day of October, 1976, the defendant knowingly assaulted Richard Heieck *or* Norman Jahnke with a weapon or other instrument or thing likely to produce bodily harm;

(2) That the act occurred in Lewis County, Washington.

(Italics ours.)

■ Defendant claims that the use of the disjunctive in this instruction is erroneous. He theorizes that under this instruction, he could have been convicted if six members of the jury believed he assaulted Jahnke, and six were convinced the assault was against Heieck. As Washington law does require that a unanimous verdict be returned in criminal cases, *State v. Badda*, 63 Wn.2d 176, 385 P.2d 859 (1963); *State v. Rogers*, 5 Wn. App. 347, 486 P.2d 1125 (1971), we agree with defendant's contention and find that the instruction was improper.

The prosecutor argues that the case of *State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976) supports the use of this instruction. *Arndt*, however, merely reaffirmed the long-standing rule that when alternative means of committing a single crime are charged, and there is substantial evidence introduced to support each alternative, "unanimity of the jury as to the mode of commission is not required." *State v. Arndt, supra* at 376; *State. v. Stuhr*, 1 Wn.2d 521, 96 P.2d 479 (1939); *State v. Talbott*, 199 Wash. 431, 91 P.2d 1020 (1939); *cf. State v. Carothers*, 84 Wn.2d 256, 525 P.2d 731 (1974) (jury need not be unanimous in determining if defendant was principal or aider or abettor of crime to sustain conviction). In *Arndt*, which involved a charge of grand larceny–welfare fraud, disagreement among jurors concerning the precise manner in which the defendant perpetrated the crime did not change the fact that all jurors found that defendant had committed the charged crime. Here, instruction No. 6A, in effect, splits the transaction into separate crimes: an assault on Jahnke and an assault on Heieck. If the prosecutor intended to bring two counts of assault against defendant, he should have done so in the information—and unanimous juries would have been required to

support a conviction on each count.[1] We find the current situation to be intolerable, and hold that instruction No. 6A is impermissible.

Although the use of an improper instruction is presumed to be prejudicial, *State v. Wanrow*, 88 Wn.2d 221, 559 P.2d 548 (1977), *State v. Burnham*, 19 Wn. App. 442, 576 P.2d 917 (1978), our review of the record convinces us that the error here was harmless. Defendant's testimony unequivocally indicates that the assault was against Jahnke and Heieck as a unit. While explaining his reasons for firing at the vehicle, the defendant stated:

> I meant business. I told them to leave, and they did not leave. So, I shot the car, and I meant business.
>
> . . .
>
> To show them that I was telling the truth, that I meant them to leave.

Clearly, defendant's actions were directed to both men. Defendant intended to scare them both away; for the purpose of shooting, he drew no distinction between the two men. In addition, the undisputed fact that Heieck and Jahnke were standing quite close together when this incident occurred, further strengthens our conviction that the jury must have found that the assault was directed at both men, and was not influenced by the use of the disjunctive in instruction No. 6A. Faced with this evidence, a juror's only reasonable option, if he believed any assault had been committed, was to find that such criminal act was directed at both Heieck and Jahnke. As a unanimous verdict was, of course, rendered in this case, we conclude that the entire jury must have reached this result. Any error involved in the giving of instruction No. 6A was, therefore, harmless.

In his remaining assignment of error, defendant chal-

---

[1] In both the original and amended informations filed by the prosecutor, the defendant is charged with one crime: assault in the second degree against Jahnke *and* Heieck.

lenges the imposition of the 20–year maximum prison term pursuant to the enhanced penalty provision of the uniform firearms act, RCW 9.41.025,[2] as interpreted by our decision in *State v. Lewis,* 15 Wn. App. 172, 179–81, 548 P.2d 587 (1976). After a long and careful reconsideration of the *Lewis* interpretation of the firearms act, we agree with defendant that it was improper to impose the 20–year maximum enhanced penalty, and we recede from *Lewis* insofar as it is inconsistent with the rationale of this opinion.

---

[2]RCW 9.41.025 provides:

"Any person who shall commit or attempt to commit any felony, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

"(1) For the first offense the offender shall be guilty of a felony and the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred;

"(2) For a second offense, or if, in the case of a first conviction of violation of any provision of this section, the offender shall previously have been convicted of violation of the laws of the United States or of any other state, territory or district relating to the use or possession of a firearm while committing or attempting to commit a crime, the offender shall be guilty of a felony and shall be imprisoned for not less than seven and one–half years, which sentence shall not be suspended or deferred;

"(3) For a third or subsequent offense, or if the offender shall previously have been convicted two or more times in the aggregate of any violation of the law of the United States or of any other state, territory or district relating to the use or possession of a firearm while committing or attempting to commit a crime, the offender shall be guilty of a felony and shall be imprisoned for not less than fifteen years, which sentence shall not be suspended or deferred;

"(4) Misdemeanors or gross misdemeanors categorized as 'Inherently Dangerous' as the term is used in this statute means any of the following crimes or an attempt to commit any of the same: Assault in the third degree, provoking an assault, interfering with a public officer, disturbing a meeting, riot, remaining after warning, obstructing firemen, petit larceny, injury to property, intimidating a public officer, shoplifting, indecent liberties, and soliciting a minor for immoral purposes.

"(5) If any person shall resist apprehension or arrest by firing upon a law enforcement officer, such person shall in addition to the penalty provided by statute for resisting arrest, be guilty of a felony and punished by imprisonment for not less than ten years, which sentence shall not be suspended or deferred."

We note initially that the uniform firearms act has had a long and troubled history.[3] Even in its third revision it is plagued by language that makes meaningful interpretation extremely difficult.[4] One of the more cryptic passages is the phrase, "not less than five years." Standing alone, the

---

[3]*See State v. Boyer,* 4 Wn. App. 73, 75–78, 480 P.2d 257 (1971) for an account of the unproductive dialogue between the courts and the legislature regarding the two earlier versions of the uniform firearms act, RCW 9.41.025.

[4]The uniform firearms act, RCW 9.41.025, presents several thorny problems of interpretation, some of which have been resolved by courts with varying degrees of success.

For example, the defendant in *State v. Boyer,* 4 Wn. App. 73, 480 P.2d 257 (1971), raised the question of whether RCW 9.41.025 creates a new felony or merely a new penalty for use of a firearm. The *Boyer* court frankly acknowledged that the legislative intent on the issue is unclear, but nevertheless held that the act creates only an additional penalty, not a separate offense. *See also State v. Frazier,* 81 Wn.2d 628, 632, 503 P.2d 1073 (1972) (affirming the single felony theory). In this regard the Washington firearms statute is unusual in comparison with other firearms statutes, which do define a separate offense for possession of a weapon. *See for example* 18 U.S.C. § 924(c) (1976) (18 U.S.C.A. § 924(c) (1976)); Ind. Code Annot. § 10–4709, p. 713 (Supp. 1969); Okla. Annot. Title 21 § 1287 (Supp. 1970); *State v. Boyer, supra* at 78, ns.1 and 2.

Another problem arises because the statute is unclear as to whether the "inherently dangerous misdemeanors" listed in RCW 9.41.025(4) become felonies when committed by one armed with or in possession of a firearm. In *State v. Boyer, supra,* it was stated in dictum that misdemeanors do become felonies. That left open the troubling question addressed in *State v. Lewis,* 15 Wn. App. 172, 548 P.2d 587 (1976), namely, what is the proper maximum enhanced penalty to be imposed for a misdemeanor committed with a firearm?

Similarly, the statute is silent as to what is the proper maximum enhanced penalty to be imposed for a felony committed with a firearm. The statute states only that the penalty is to be "not less than five years." The meaning of that phrase is at issue in this appeal.

There are at least two ways to interpret the phrase, "shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm". It might mean the minimum mandatory jail time is to be served as part of the underlying term; or instead that it is to be added, or "stacked" onto the underlying term, with a resulting total sentence in excess of the statutory maximum penalty for the underlying crime. This question also is at issue in this appeal.

Although the statute prevents suspension or deferral of the enhanced penalty, its grammar is unclear as to whether the sentencing court properly may suspend or defer the penalty for the underlying crime itself. For purposes of this appeal we

phrase apparently puts no upper limit on the length of an enhanced prison sentence. In *Lewis,* we attempted to give

---

assume, without holding, that the underlying sentence *cannot* be deferred or suspended. To assume otherwise arguably would remove all meaning from the phrase *"in addition to* the penalty provided by statute for the crime committed without use or possession of a firearm." (Italics ours.)

The statute lacks consistent parallel construction, so that it is unclear whether the disparate terms, "imprison" and "impose a sentence" have been used interchangeably. The preamble to RCW 9.41.025, as well as (2), (3) and (5), states the prisoner shall be "imprisoned" for the enhanced term; (1), on the other hand, states "the court shall impose a sentence" on the prisoner.

The statute is obsolete insofar as several of the "inherently dangerous misdemeanors" listed in (4) no longer exist in the present criminal code: *e.g.,* "provoking an assault," "disturbing a meeting," and "obstructing firemen." Others have been redefined or renamed: *e.g.,* "interfering with a public officer," which is replaced by RCW 9A.76.020 (obstructing a public servant); "remaining after warning," which is replaced by RCW 9A.84.020 (failure to disperse); "injury to property," which is replaced by RCW 9A.48.070 (malicious mischief); "soliciting a minor," which is replaced by RCW 9A.88.020 (communication with a minor for immoral purposes). Still other misdemeanors have been converted into felonies: *e.g.,* "riot," which now is a class C felony if committed with a deadly weapon, RCW 9A.84.010(2)(a); and "indecent liberties," which now is a class B felony, RCW 9A.88.100.

The statute also has caused confusion in the courts regarding the question of what felonies committed with firearms are subject to the enhanced penalty provisions of RCW 9.41.025. The statute has been held to be inapplicable to enhance the penalty for attempted first–degree robbery. RCW 9A.56.200 (robbery in the first degree); RCW 9A.28.020 (criminal attempt). *State v. Workman,* 90 Wn.2d 443, 454, 584 P.2d 382 (1978). The *Workman* court reasoned in three steps that possession of a deadly weapon (including a firearm as defined in RCW 9A.04-.110(6)) is one of the alternate aggravating elements which will elevate the crime to first degree; the penalty provided presumably takes that alternate aggravating element into account; therefore the enhanced penalty provision cannot be applied so as to impose an additional penalty for the firearm element. The court refused to apply the *Workman* rule, however, in *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979). In *Foster* the court held that RCW 9.41.025 *does* apply to enhance the penalty for second–degree assault, RCW 9A.36.020, even though the second–degree assault statute—like the first–degree robbery statute in *Workman*—includes possession of a weapon (including a firearm) as one of the alternate aggravating elements which will elevate the crime to the second degree. The divergent results reached in *Workman* and *Foster* raise the question of whether RCW 9.41.025 is applicable to other aggravated felonies which define the use or possession of a firearm as one of the possible elements of the crime. *See for example* RCW 9A.36.010 (assault in the first degree); RCW 9A.52.020 (burglary in the first degree); RCW 9A.84.010 (riot); RCW 9.79.170(1)(a) (rape in the first degree).

meaning to that phrase. There the defendant used a firearm in the commission of a gross misdemeanor. We determined that the enhanced penalty of "not less than five years" raised the gross misdemeanor to the status of a felony for sentencing purposes. Because the enhancement statute specifies no maximum penalty for such a felony, we felt bound to impose the sentencing provision of RCW 9.95.010,[5] which calls for a 20-year to life maximum sentence where a felony statute does not provide a maximum term. *State v. Lewis, supra* at 179-81. *See also State v. Palmer,* 73 Wn.2d 462, 438 P.2d 876 (1968); *Chapin v. Rhay,* 59 Wn.2d 459, 367 P.2d 832 (1962).

Technically, a 20-year maximum enhanced sentence is defensible if one reads RCW 9.41.025 in conjunction with RCW 9.95.010. It is unclear, however, whether the legislature intended the two statutes to be read together. In a recent case involving a different question regarding RCW 9.41.025, *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978), the court resolved the ambiguity in favor of the defendants on equitable grounds, because there could be found no clear legislative intent to the contrary. The same statute, RCW 9.41.025, has engendered the question we face here, namely, whether the enhanced penalty statute was intended to lengthen prison time beyond the statutory maximum for the underlying offense. We can find no evidence, nor can we believe that the phrase "not less than five years" was intended to require judges to set maximum

---

[5]RCW 9.95.010 states:

"When a person is convicted of any felony, except treason, murder in the first degree, or carnal knowledge of a child under ten years, and a new trial is not granted, the court shall sentence such person to the penitentiary, or, if the law allows and the court sees fit to exercise such discretion, to the reformatory, and shall fix the maximum term of such person's sentence only.

"The maximum term to be fixed by the court shall be the maximum provided by law for the crime of which such person was convicted, if the law provides for a maximum term. If the law does not provide a maximum term for the crime of which such person was convicted the court shall fix such maximum term, which may be for any number of years up to and including life imprisonment but in any case where the maximum term is fixed by the court it shall be fixed at not less than twenty years."

terms of 20 years to life for offenders who use firearms to commit the crimes listed in RCW 9.41.025.[6] Such a scheme in effect would convert every crime committed with a firearm under RCW 9.41.025—felony or misdemeanor—into a class A felony with a possible life sentence. If the firearms act was intended to be that severe, it should have been drafted more specifically. The lack of legislative record, and the disproportionately severe punishment resulting from a literal reading of the two statutes together, lead us to resolve the ambiguity in favor of the defendant.

We base our conclusion on two equitable principles employed in *Workman*: the rule of lenity and the rule giving specific statutes precedence over general statutes.

■ The rule of lenity is the judicial doctrine by which courts decline to interpret criminal statutes so as to increase the penalty imposed, absent clear evidence of legislative intent to do otherwise. *Simpson v. United States,* 435 U.S. 6, 55 L. Ed. 2d 70, 78, 98 S. Ct. 909 (1978); *State v. Workman, supra* at 454. *See also State v. Arndt,* 87 Wn.2d 374, 385, 553 P.2d 1328 (1976); *State v. Boyer,* 4 Wn. App. 73, 76, 480 P.2d 257 (1971). Put another way, it is the rule that "'where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.'" *Adamo Wrecking Co. v. United States,* 434 U.S. 275, 285, 54 L. Ed. 2d 538, 548, 98 S. Ct. 566 (1978); *United States v. Bass,* 404 U.S. 336, 347, 30 L. Ed. 2d 488, 92 S. Ct. 515 (1971); *Rewis v. United States,* 401 U.S. 808, 812, 28 L. Ed. 2d 493, 91 S. Ct. 1056 (1971). *See Simpson v. United States, supra* at 14, 55 L. Ed. 2d at 78.

■ There is undeniable ambiguity concerning the scope of the open–ended. phrase "not less than five years," because the phrase is unclear as to whether defendant's

---

[6]The Senate Journal for the 1969 First Extraordinary Session, during which the firearms bill was enacted, indicates some senators were worried that a 5–year mandatory penalty might be too harsh in the case of some misdemeanors. Laws of 1969, 1st Ex. Sess., pp. 1325–27. The journals, however, do not indicate whether the legislators perceived that the phrase "not less than five years" might be read to subject firearms felony offenders to the 20 years to life penalty provision.

total sentence and actual prison time may exceed the statutory maximum penalty for second–degree assault with a weapon, RCW 9A.36.020(1)(c). Without a specific legislative directive that we do otherwise, we decline to interpret the phrase in its most severe sense, namely, as an authorization of a 20–year to life sentence to be imposed in addition to the penalty for the underlying crime. Instead, we believe it to be a more reasonable estimation that the legislature intended RCW 9.41.025 to "enhance" the underlying penalty for a crime only in the sense of requiring a nondeferrable and nonsuspendable minimum jail term to be served within the time limits of the original sentence.[7]

In reaching this interpretation, we believe it is significant that the statute is so exacting as to the mandatory minimum terms (5, 7 1/2 and 15 years for first, second and third offenses, respectively), while at the same time silent as to a maximum term. Such a marked contrast suggests that the legislature purposely left out reference to the maximum term and instead assumed the mandatory enhanced penalty would be set within the time limits of the maximum sentence already imposed for the root crime.

█ The second equitable principle on which we rely is the rule of statutory construction that gives a specific statute precedence over a more general statute, absent a clear and definite legislative directive, where both are addressed to a common concern. *State v. Workman, supra* at 454; *Simpson v. United States, supra* at 14, 55 L. Ed. 2d 78.

---

[7]We recognize that in some cases the mandatory five–year minimum sentence might be longer than the sentence for underlying crime: *e.g.*, in *State v. Lewis*, 15 Wn. App. 172, 548 P.2d 587 (1976), where the defendant committed an "inherently dangerous" gross misdemeanor (1 year maximum penalty); or in the case of a class B felony (10 years maximum sentence) committed by a third–time offender (for whom RCW 9.41.025(3) prescribes a mandatory minimum term of 15 years). In such cases, we believe the statutory minimum term most reasonably can be interpreted as both a minimum and a maximum, requiring the offender to serve

*See also* 2A C. Sands, *Statutes and Statutory Construction* § 51.05 (4th ed. 1973).

Here, the specific statute is second–degree assault with a weapon, RCW 9A.36.020(1)(c). The general statute is the maximum penalty provision of RCW 9.95.010. The common concern of both statutes is to determine the maximum penalty for second–degree assault committed while armed with or in possession of a firearm. Reading the specific second–degree assault statute in conjunction with RCW 9.41-.025, one finds a composite penalty comprising both a minimum term of "not less than five years" (under RCW 9.41.025) and a maximum term of 10 years (under RCW 9A.36.020(1)(c)). Thus, the specific maximum penalty for second–degree assault committed with a weapon makes it unnecessary to resort to the more general RCW 9.95.010 to determine the maximum penalty for defendant's crime.

It must be emphasized that this interpretation of the phrase, "not less than five years," is not the only possible interpretation of the phrase. Because of the statute's ambiguity and the lack of evidence regarding legislative intent, however, we feel compelled to rely on these equitable principles to determine the formula for enhanced sentences under the firearms act.

We therefore hold that defendant's enhanced penalty under RCW 9.41.025 is merely an additional minimum condition to the underlying 10–year maximum sentence already imposed for second–degree assault, rather than a new term of years to be served separately from the underlying sentence. We further hold that defendant's total time in prison, both for assault and for use of the firearm, may not exceed the statutory 10–year maximum penalty for second–degree assault.

the mandatory term applicable under the firearm statute, with credit for actual time served on the underlying penalty for the basic gross misdemeanor or felony. Such a result is consistent with the rule of lenity adopted in this case.

560

For the reasons noted, we affirm defendant's conviction, but remand the case to the trial court for resentencing consistent with this opinion.

PEARSON, C.J., and SOULE, J., concur.

Reconsideration denied February 21, 1979.

Review granted by Supreme Court May 4, 1979.