[No. 6271–1. Division One. May 14, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. BARRY WAYNE GROSS, *Appellant.*

*Dan Kilpatric, Public Defender,* for appellant.

*Norm Maleng, Prosecuting Attorney, J. Robin Hunt, Deputy,* and *Timothy X. Sullivan, Legal Intern,* for respondent.

RINGOLD, J.—Defendant Barry Wayne Gross appeals the judgment and sentence imposed after his conviction of one count of rape in the second degree and three counts of rape in the first degree. In its special verdicts the jury found that the defendant was armed with a deadly weapon during the commission of the latter three counts, in violation of both RCW 9.95.040 and 9.41.025.

A woman raped after being picked up while hitchhiking copied the license number of the white van driven by her assailant. On the basis of such information provided to the

police, Gross was arrested while driving the van on September 13, 1977. By various identification procedures Gross was inculpated in three other rape incidents, from which the present charges arose.

At the time of his arrest Gross was read his rights as required by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966)[1] which he said he understood. He was not asked whether he wanted to waive any rights. Gross made some implicating statements at that time. Later at the police station he was given the standard advisement of rights form, which he read. He signed the explanation but refused to sign the waiver portion of the form. At the CrR 3.5 hearing he testified that he did not sign the waiver because he "didn't understand it until my lawyer was there." The officer then advised the defendant, "You don't have to sign it. It is not mandatory," and proceeded with interrogation, which elicited more incriminating information. The next day Gross was presented with yet another advisement/waiver form; again he said he understood the rights, but refused to sign the waiver. He volunteered more information.

Two days later the detective presented Gross with an advisement/waiver form, the waiver portion of which he again refused to sign. In response to further interrogation Gross revealed more information. When he said he wanted to talk to his attorney, the detective terminated the interview. After the CrR 3.5 hearing, at which the above events were reported, the trial court ruled that the statements made by Gross would be admissible in the trial, but failed to enter findings of fact and conclusions of law. In its oral ruling the court said, in material part:

> If he had signed the waiver, then there wouldn't be much doubt that he did waive completely all the rights that he understood he had. Without signing the waiver he then is retaining those rights subject to such exercise or waiver

---

[1]On April 24, 1979, the United States Supreme Court held, in *North Carolina v. Butler,* 441 U.S. 369, 60 L. Ed. 2d 286, 99 S. Ct. 1755 (1979), that a waiver may be inferred from the evidence.

as he thereafter determines upon. It appears to the Court that to allow the defendant to refuse to sign and then make statements which he can later say do not bind him would be completely improper.

The trial followed, ending in guilty verdicts. Gross was sentenced to 10 years for the second–degree count and 20 years each for the three first–degree counts, all to run concurrently.

Upon initial review of this appeal we remanded the case to the trial court for entry of findings of fact and conclusions of law required by CrR 3.5(c). Now provided with a complete record, we consider the following issues:

1. Did the State meet its burden of proving that the defendant knowingly, voluntarily and intelligently waived his *Miranda* rights?

2. Was it error for the defendant to be subjected to a 5–year mandatory term pursuant to RCW 9.41.025 when the substantive offense of which he was convicted required the use of deadly weapon as one of its essential elements?

## WAIVER OF MIRANDA RIGHTS

On the basis of *State v. Davis,* 73 Wn.2d 271, 283, 438 P.2d 185 (1968), Gross urges that the burden of proof borne by the State to show voluntary waiver of *Miranda* rights is the beyond a reasonable doubt standard. *Davis,* decided soon after *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), represents an early effort by our Supreme Court to analyze the effect of that decision upon Washington law. The *Davis* court distinguishes between the fact of an admission, or confession, and the knowing, voluntary and intelligent waiver of constitutional rights. Regarding the burden the State must meet to prove waiver, the court said:

> [F]or the prosecution to meet its burden of proving a valid waiver . . . the government's burden of proof is greater where the alleged waiver was given while the accused was under arrest . . . Some courts have gone even further and required that the trial court must find

admissibility beyond a reasonable doubt before the confession may be submitted to the jury. . . . The latter view seems to be predominate and correct.

*State v. Davis, supra* at 285–86.

Later, in *State v. Braun*, 82 Wn.2d 157, 162, 509 P.2d 742 (1973) the Supreme Court held that "The state bears the burden of proving voluntariness by a preponderance of the evidence, . . . rather than beyond a reasonable doubt . . . "[2]

■ While we recognize that there may be a distinction between the fact of a waiver and its voluntariness, we can perceive no foundation either in law or reason upon which to erect a higher standard of proof for the one than for the other. We therefore hold that the standard of proof the State must bear in establishing a knowing, voluntary and intelligent waiver of *Miranda* rights is preponderance of the evidence.

■ The problem of the evidence to be considered and its weight in deciding whether constitutional rights have been waived was addressed by our Supreme Court in *State v. Adams*, 76 Wn.2d 650, 671, 458 P.2d 558 (1969). There the court said:

> The Supreme Court has not required an express statement by the accused for an effective waiver, but rather has forbidden the presumption that an intelligent waiver was made simply from the fact that a statement was eventually extricated from the accused after he was warned of his rights. Some additional showing is required that the inherently coercive atmosphere of custodial interrogation has not disabled the accused from making a free and rational choice.

[2]For this proposition the court cited *State v. Davis*, 73 Wn.2d 271, 283, 438 P.2d 185 (1968), whose dictum seems directly opposed to the holding in *State v. Braun*, 82 Wn.2d 157, 509 P.2d 742 (1973). The court also cited *Lego v. Twomey*, 404 U.S. 477, 30 L. Ed. 2d 618, 92 S. Ct. 619 (1972) which holds only that the preponderance standard for admissibility does not violate the requirement that a conviction must rest upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. Despite the ipse dixit quality of the *Braun* holding, however, it is binding precedent unless changed by the Supreme Court.

Thus, there is no talismanic significance to Gross' refusal to sign the waiver. A determination of waiver must be made on the basis of the whole record before the court, and must be determined on the basis of testimony accepted as correct by the trial court. *State v. Cashaw,* 4 Wn. App. 243, 247, 480 P.2d 528 (1971). Further, a trier of fact may draw from the evidence all inferences fairly deducible therefrom. *Dempsey v. Joe Pignataro Chevrolet, Inc.,* 22 Wn. App. 384, 390, 589 P.2d 1265 (1979).

█ The trial court found that at the scene of the arrest on September 13, 1977, at the police station the same day, and again on September 14 and 16, the defendant was advised of his *Miranda* rights, understood them, and waived them. The testimony in the record reflects only that the defendant understood his rights and volunteered information after reaching such understanding. The court was entitled to infer waiver, however, from his understanding of his rights, and from the voluntariness of his conversation with the officers on all four occasions. *Dempsey v. Joe Pignataro Chevrolet, Inc., supra.* In *State v. Cashaw, supra* at 251, the court said:

> [T]he court had the right to infer the existence of waiver from its finding that the defendant's answers were freely and voluntarily made without duress, promise or threat and with full understanding of his constitutional rights.

(Citations omitted.)

█ Against such supportive evidence, the defense asserts Gross' testimony that he "didn't understand it [the waiver] until my lawyer was there," as reflecting that he did not knowingly and intelligently waive his rights. Further the defendant points to Officer Jackson's statement to Gross that "You don't have to sign it [the waiver]. It is not mandatory" as reflecting a promise to Gross, thus raising a question of voluntariness. The trial court interpreted this statement as meaning only that the defendant was not required to sign the waiver, and that it had no coercive import. Finally, the trial court interpreted Gross' assertion of his right to silence at the third interview as especially

suggestive that Gross fully understood his rights. It is not our role to reevaluate the credibility of witnesses' testimony and other evidence. *State v. Davis, supra* at 284. Whether the trial level burden of proof is preponderance of the evidence, clear and convincing evidence or proof beyond a reasonable doubt, when an appellate tribunal determines the evidence is substantial,[3] the trial court's findings of fact will not be reversed. *State v. Lewis,* 19 Wn. App. 35, 573 P.2d 1347 (1978). The trial court applied the proper burden of proof, supportive evidence is substantial and we affirm.

SENTENCE ENHANCEMENT STATUTE

RCW 9.41.025 restricts a court's sentencing discretion when the jury finds that the underlying crime was committed by the defendant while armed with, or in the possession of any firearm. The use or threatened use of a deadly weapon aggravates second–degree rape to first–degree rape. RCW 9.79.170(1)(a). Our Supreme Court has recognized that a firearm is considered a deadly weapon under RCW 9A.04.110. *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978). Gross argues that the same fact cannot both aggravate the rape from second to first degree and serve as the basis for an additional penalty.

This argument has prevailed in the context of first–degree assault, *State v. Caldwell,* 23 Wn. App. 8, 591 P.2d 849 (1979) and first–degree robbery, *State v. Workman, supra.* Without stating a rule of general applicability, the courts in those cases remanded for resentencing without the application of RCW 9.41.025.

We understand the rule to be that where a crime necessarily requires proof of use or possession of a deadly weapon as an element of the offense, the sentence enhancement statute, RCW 9.41.025, cannot be applied so as to

---

[3]We recently decried any attempt by appellate courts to establish a standard of appellate review higher than substantial evidence on the basis that any such higher standard inexorably usurps the function of the trier of fact. *In re Kier,* 21 Wn. App. 836, 839 n.1, 587 P.2d 592 (1978).

enhance the penalty.[4] The applicability of the sentence enhancement statute to any particular crime must depend upon the elements of proof of the crime as charged, so no blanket rule can be enunciated so as to prevent use of the statute in every first–degree assault, first–degree burglary, or first–degree rape. Each of those first–degree offenses has aggravating elements other than use or possession of a deadly weapon, so if the first–degree offense is charged on the basis of another of the aggravating elements, there would be no necessary proof of use or possession of a deadly weapon to establish the crime, and the sentence enhancement statute could still be used. Inasmuch as the three counts of first–degree rape here were charged on the basis of RCW 9.79.170(1)(a), use or threatened use of a deadly weapon, establishment of the offense necessarily required proof of use or possession of a deadly weapon, and therefore RCW 9.41.025 is inapplicable.

The sentence imposed for the three first–degree rape convictions were "a maximum term of not more than . . . 20 years" for each count, to run concurrently. RCW 9.79-.170(2) requires a term of "not less than 20 years."[5] Gross

---

[4]In *State v. Stephens,* 22 Wn. App. 548, 591 P.2d 827 (1979), a case treating a different issue regarding RCW 9.41.025, the court suggested that the result in *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978) is divergent from the result in *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979), where the Supreme Court upheld use of RCW 9.41.025 to enhance the penalty of second–degree assault. *Stephens,* at 555 n.4. The difference between the two cases is that in *Foster* there was no *necessary* proof of use or possession of a deadly weapon; the *Foster* court pointed out this distinction by saying that "the second–degree assault statute, unlike the first–degree robbery statute in *Workman* calls for no *necessary proof* of possession of a deadly weapon as an element of the crime . . ." (Italics ours.) *Foster,* at 477. We, therefore, see no inconsistency between these two opinions.

[5]RCW 9.41.025 would also require a sentence of not less than 5 years. *See State v. Stephens, supra.* The defendant's sentences were not suspended or deferred, as mandated not only by RCW 9.41.025, but also by RCW 9.79.170(2). Restriction of the parole board's discretion by application of RCW 9.95.040 is still appropriate, however. *State v. Workman, supra* at 455–56; *State v. Edwards,* 17 Wn. App. 355, 360, 563 P.2d 212 (1977). RCW 9.95.040 prevents the parole board from releasing the defendant after 3 years, as might otherwise be possible according to the terms of RCW 9.79.170(2).

is entitled to be resentenced upon these counts to enable the trial court to consider whether to grant a suspended or deferred sentence "for the purpose of commitment to an inpatient treatment facility." RCW 9.79.170(2).

We remand for resentencing in accord with the provisions of RCW 9.79.170(2). *State v. Workman, supra; State v. Caldwell, supra.*

WILLIAMS and DORE, JJ., concur.

Reconsideration denied June 26, 1979.

Review denied by Supreme Court October 26, 1979.