# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46885-9-II |
| Respondent, | |
| v. | |
| BRUCE ELI BRATTON, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Bruce E. Bratton appeals his conviction for one count of unlawful possession of a controlled substance.[1]  He argues that (1) the trial court erred in admitting statements he made to officers, (2) the State failed to provide sufficient evidence to support his conviction, (3) the doctrine of corpus delicti bars the use of his statements, and (4) he received ineffective assistance of counsel.  Finding no error, we affirm Bratton's conviction.

FACTS

A.      *Substantive Facts*

Michael Stringer, a slot machine supervisor at the Seven Cedars Casino in Clallam County, discovered a small "baggie" that contained a white powdery substance on the casino floor near "slot bank 52" and reported it to casino security.[2]  Verbatim Report of Proceedings (VRP) (Sept. 30, 2014) at 62.  Tribal gaming agent Larry Graham took possession of the baggie.  Graham reviewed the surveillance video and saw a small baggie drop from a person's front pants

---

[1] RCW 69.50.4013.

[2] "Bank 52" refers to a particular row of slot machines.

pocket while the person was seated near "slot bank 52," but was unable to confirm whether the baggie found by Stringer was identical to the one on the surveillance video. VRP at 73-74. Clallam County Deputy Jeff Pickrell contacted Jefferson County Sheriff's Detective Brett Anglin, who identified the man on the video as Bruce Bratton.

Jefferson County Sergeant Mark Apeland arrested Bratton at his residence and read Bratton his *Miranda* rights.[3] Sergeant Apeland did not ask Bratton whether he wished to waive his *Miranda* rights, but he did ask Bratton whether he understood them and Bratton acknowledged that he understood his rights.

Detective Brett Anglin arrived two to three minutes later and was told that Bratton had previously been read his *Miranda* rights. Detective Anglin did not read Bratton his *Miranda* rights nor did he ask Bratton whether he was aware of his rights. Nonetheless, Detective Anglin talked briefly with Bratton. Bratton told Detective Anglin that he already knew about the incident.

Detective Anglin arranged to have a Jefferson County officer drive Bratton to the county line where Deputy Pickrell obtained custody of Bratton. Deputy Pickrell did not provide Bratton with *Miranda* warnings, although he did ask Bratton if he remembered and understood these warnings. Deputy Pickrell engaged in conversation with Bratton, during which conversation Bratton insisted that the methamphetamine was for his personal use only.

The Washington State Patrol Crime Laboratory tested the material in the baggie and determined it was methamphetamine. The State charged Bratton with one count of unlawful possession of a controlled substance.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966).

B.      *3.5 Hearing*

After a pretrial CrR 3.5 hearing to determine the admissibility of Bratton's statements to police, the trial court made the following findings of fact:

1.  All of the law enforcement officers that testified, indicated that Mr. Bratton was cooperative, he indicated that he understood his rights, he didn't seem confused, he was not under the influence of any intoxicants as far as they could tell at that time and that these observations applied during the period of time from his arrest to his eventual transport to Clallam County.
. . . .
3.  As soon as he was placed under arrest, Mr. Bratton indicated that he knew "what this was about."
4.  Sgt. Apeland then stopped the defendant at that point and read him his *Miranda* rights.
5.  Sgt. Apeland gave the defendant his full rights under *Miranda*.
6.  The defendant indicated that he understood his *Miranda* rights and then began immediately, without any prompting, to talk about the baggie at the casino.
7.  The defendant began talking before his rights were provided and voluntarily began talking again immediately after his *Miranda* rights were provided by Sgt. Apeland.
8.  The statements the defendant made to Sgt. Apeland were with full understanding of his *Miranda* rights.
9.  Detective Anglin appeared within two or three minutes of the arrest.
10. Det. Anglin was advised by Sergeant Apeland that Apeland had provided Bratton with his *Miranda* rights.
11. Det. Anglin asked Bratton, "Do you want to talk to me about what happened?"
12. Det. Anglin's question to Bratton was very clear: "[D]o you want to talk about it," and the defendant began to talk about what happened; it was a very short conversation.
13. There was no coercion or threats of any kind during the entire episode that took place at the defendant's residence where he was arrested.
14. Within an hour's time, probably less, from Quilcene to the border of Clallam County, the transport took place and Deputy Pickrell encountered the defendant at the borderline and Pickrell was advised that *Miranda* rights had been given to Bratton.
15. Pickrell specifically asked the defendant if he remembered and understood those rights and then Bratton began to speak to Pickrell about what happened.
16. This was a knowing conversation that Mr. Bratton engaged in with Deputy Pickrell.

No. 46885-9-II

Suppl. Clerk's Papers (CP) at 85-87. Based on the above findings, the trial court made the

following conclusions of law:

> 1. Sergeant Apeland adequately advised the defendant of *Miranda* warnings and the defendant understood the *Miranda* warnings when making statements to Sergeant Apeland, Detective Anglin, and Deputy Pickrell.
> 2. The defendant waived his *Miranda* rights by beginning to converse with Sergeant Apeland about what happened without any prompting.
> . . . .
> 4. There was no coercion or threats of any kind during the interactions between the defendant, Sgt. Apeland and Det. Anglin and all statements by the defendant during these interactions were voluntary.
> 5. The defendant's conversation with Deputy Pickrell was voluntary and was not the result of any threats or coercion and the defendant made his statements with full understanding of his *Miranda* rights and the Court will allow an introduction of all those statements.

Suppl. CP at 87.

C.    *Trial*

At trial, casino employees and police officers testified to the facts as described above.

Additionally, Deputy Pickrell testified that Bratton told him that if he had any methamphetamine

in his possession at the casino it would have been for personal use, not for dealing.

A jury found Bratton guilty as charged. Bratton appeals.

ANALYSIS

I. ADMISSIBILITY OF BRATTON'S STATEMENTS

Bratton first argues that he did not make a knowing, voluntary, and intelligent waiver of

his *Miranda* rights, and therefore, the trial court erred when it did not suppress his statements to

the officers. Bratton argues that (1) Sergeant Apeland's reading of *Miranda* warnings was

insufficient because he did not provide Bratton the opportunity to read, review, and decide

whether he wanted to waive his rights; (2) Sergeant Anglin and Detective Pickrell were required

4

to readvise Bratton of his *Miranda* rights; and (3) the passage of time prior to Deputy Pickrell's interrogation of Bratton invalidated Sergeant Apeland's *Miranda* warnings. We disagree.

A.      *Standard of Review*

We review de novo the adequacy of a *Miranda* warning and whether there was a valid waiver of *Miranda* rights. *State v. Johnson*, 94 Wn. App. 882, 897, 974 P.2d 855 (1999). We review challenged findings of fact from a CrR 3.5 hearing for substantial evidence, but unchallenged findings of fact are verities on appeal. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). We review de novo whether the trial court's CrR 3.5 conclusions of law are supported by the findings of fact. *State v. Solomon*, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002).

Bratton does not assign error to any of the trial court's findings of fact from the CrR 3.5 hearing. Accordingly, the findings are verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Bratton challenges the following conclusions of law: (1) Sergeant Apeland adequately advised Bratton of his *Miranda* rights and Bratton understood his rights when he spoke with Sergeant Apeland, Detective Anglin, and Deputy Pickrell; (2) Bratton waived his *Miranda* rights when he began to converse with Sergeant Apeland, Detective Anglin, and Deputy Pickrell; and (3) that Bratton fully understood his Miranda rights when he spoke with Deputy Pickrell.

B.      Miranda *Waiver*

Bratton contends that the trial court erred when it did not suppress his statements to police because Sergeant Apeland did not provide him with the opportunity to read, review, and decide to waive his rights before officers spoke with him. We disagree.

5

1.  Miranda *Standards*

Before a defendant's incriminating statements can be used against him, the State must demonstrate that the defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights. *State v. Radcliffe*, 164 Wn.2d 900, 905-06, 194 P.3d 250 (2008).

The State bears the burden of proving that a suspect knowingly, voluntarily, and intelligently waived his *Miranda* rights. *State v. Mayer*, 184 Wn.2d 548, 556, 362 P.3d 745 (2015). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 61 L. Ed.2d 197 (1979)). Circumstances that are potentially relevant in the totality of the circumstances analysis include whether there was police coercion; "the length of the interrogation; its location; its continuity; the defendant's maturity, education, physical condition, and mental health; and whether the police advised the defendant of the rights to remain silent and to have counsel present during custodial interrogation." *State v. Unga*, 165 Wn.2d 95, 101, 196 P.3d 645 (2008).

We have found an implied waiver where the record reveals that a defendant "understood his rights and volunteered information" and where the "defendant's answers were freely and voluntarily made without duress, promise or threat and with a full understanding of his constitutional rights." *State v. Terrovona*, 105 Wn.2d 632, 646-47, 716 P.2d 295 (1986).

2. *Bratton's Waiver was Knowing, Intelligent, and Voluntary*

The facts of this case are similar to *State v. Gross*, 23 Wn. App. 319, 324, 597 P.2d 894, *review denied*, 92 Wn.2d 1033 (1979). In *Gross*, the defendant made a statement after police officers read his *Miranda* warnings, but did not ask him if he wished to waive his rights. 23 Wn. App. at 324. We held that the defendant's assertion that he understood his rights, followed by his volunteering information, reflected a knowing, voluntary, and intelligent waiver. 23 Wn. App. at 324.

Here, the trial court found that Sergeant Apeland adequately advised Bratton of his *Miranda* rights and that Bratton understood those rights when he spoke with Sergeant Apeland, Detective Anglin, and Deputy Pickrell. The trial court also found that Bratton's statements to Sergeant Apeland, Detective Anglin, and Deputy Pickrell were voluntary and not the result of any threats or coercion of any kind. Thus, the trial court's findings of fact directly support its conclusion that Bratton knowingly, voluntarily, and intelligently waived his *Miranda* rights when he made statements to officers.

3. Miranda-*in-the-Middle*

Bratton also appears to argue that he did not knowingly, voluntarily, and intelligently waive his *Miranda* rights before he made statements to Detective Anglin or Deputy Pickrell because neither officer advised him of his rights before they questioned him. Bratton's argument appears to reference an interrogation technique that we refer to as "*Miranda*-in-the-middle." *See, e.g.*, *United States v. Pacheco-Lopez*, 531 F.3d 420, 425 (6th Cir. 2008); *see also Missouri v. Seibert*, 542 U.S. 600, 604, 124 S. Ct. 2601 159 L. Ed. 2d 643 (2004).

Bratton analogizes the facts in his case to those in *Missouri v. Seibert*, where the United States Supreme Court determined that officers intentionally violated the *Miranda* requirement by employing manipulative strategies to obtain an unwarned confession. *Seibert*, 542 U.S. at 616. In *Seibert*, police intentionally withheld *Miranda* rights, obtained an unwarned confession, paused the interrogation, returned to the suspect, provided *Miranda* warnings after a short break, and obtained a second confession based on the information the suspect provided prior to receiving *Miranda* warnings. *Seibert*, 542 U.S. at 604-05. The United States Supreme Court held that neither confession was knowing, intelligent, and voluntary. 542 U.S. at 616.

The facts in this case are easily distinguishable from those in *Seibert*. Here, the trial court found that (1) Bratton knew and understood his rights *before* any officer began questioning him, (2) Sergeant Apeland stopped Bratton from offering self-incriminating statements and read him his *Miranda* rights, (3) Bratton had a full understanding of his *Miranda* rights *before* he voluntarily spoke with Sergeant Apeland about the baggie at the casino, (4) Detective Anglin was advised that Sergeant Apeland had provided Bratton his *Miranda* warnings *before* he asked Bratton whether he wanted to talk about what had occurred, and (5) Deputy Pickrell asked Bratton whether he remembered and understood his *Miranda* rights *before* Bratton began to engage in a knowing conversation with him.

Put simply, *Miranda*-in-the-middle does not apply because Bratton was not interrogated before receiving his *Miranda* warnings. Accordingly, we hold that Bratton's *Miranda*-in-the-middle argument fails.

C.    *Re-advisement of* Miranda *Rights*

Bratton also contends that both Detective Anglin and Deputy Pickrell violated his constitutional right to be free from self-incrimination when they questioned him a second time after a lapse of about one hour without first re-advising him of his *Miranda* rights.  We disagree.

The United States Supreme Court "'has eschewed per se rules mandating that a suspect be re-advised of his rights in certain fixed situations in favor of a more flexible approach focusing on the totality of the circumstances.'"  *State v. Fedorov*, 181 Wn. App. 187, 191, 324 P.3d 784 (quoting *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1128 (9th Cir. 2005)), *review denied*, 181 Wn.2d 1009 (2014).  Typically, "'[w]here a defendant has been adequately and effectively warned of his constitutional rights, it is unnecessary to give repeated recitations of such warnings prior to the taking of each separate in-custody statement.'"  *Federov*, 181 Wn. App. at 191 (alteration in original) (quoting *State v. Duhaime*, 29 Wn. App. 842, 852, 631 P.2d 964 (1981) (holding that fresh *Miranda* warnings were unnecessary where less than two hours passed between the defendant's written waiver and the questioning)).

The trial court found that Detective Anglin questioned Bratton two to three minutes after Sergeant Apeland read Bratton his *Miranda* rights and Deputy Pickrell spoke with Bratton roughly one hour later.  Although neither Detective Anglin nor Deputy Pickrell fully re-advised Bratton of his *Miranda* rights, the trial court found that (1) Detective Pickrell verified that Bratton understood his rights and understood they were still in effect, (2) Bratton fully understood his rights when he voluntarily chose to speak with Detective Anglin, and (3) Deputy Pickrell specifically asked Bratton whether he remembered and understood his *Miranda* rights

and Bratton responded affirmatively that he did understand his rights. These findings support the trial court's conclusion that Bratton properly waived his rights.

Further, courts have upheld confessions where delays between *Miranda* warnings and defendants' statements were far lengthier. *Fedorov*, 181 Wn. App. at 191-92. For example, in *Rodriguez-Preciado*, the Ninth Circuit Court of Appeals held that *Miranda* warnings were still effective after 16 hours. *Rodriguez-Preciado*, 399 F.3d at 1128-30. The two intervals here— roughly three minutes and less than an hour, respectively—are brief by comparison. The trial court's conclusion that Bratton understood his *Miranda* rights fully when he spoke with Detective Anglin and Deputy Pickrell flow directly from its findings of fact on the CrR 3.5 hearing. We reject Bratton's argument that a passage of time invalidated Sergeant Apeland's initial reading of Bratton's *Miranda* rights.

## II. SUFFICIENCY OF THE EVIDENCE: POSSESSION

Bratton next argues that his conviction is not supported by sufficient evidence because the State failed to prove beyond a reasonable doubt that he possessed the baggie of methamphetamine found on the casino floor. We disagree.

The State has the burden of proving the elements of a crime beyond a reasonable doubt. *State v. Borrero*, 147 Wn.2d 353, 364, 58 P.3d 245 (2002). In reviewing a sufficiency of evidence claim, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014); *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A challenge to the sufficiency of evidence admits the truth of the State's evidence. *Witherspoon*, 180 Wn.2d at 883. Circumstantial

evidence is equally reliable as direct evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

RCW 69.50.401(1) states that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." Under RCW 69.50.206(d)(2), methamphetamine is a controlled substance.

Here, the State presented testimony that a casino employee saw video surveillance of a small baggie falling from a man's pocket at the location where the methamphetamine was found. Deputy Pickrell identified the man in the video as Bratton. Additionally, Deputy Pickrell testified that Bratton told him that if he had any methamphetamine in his possession at the casino it would have been for personal use, not for dealing. Viewing this evidence in the light most favorable to the State, a rational trier of fact could reasonably conclude that the baggie of methamphetamine discovered on the casino floor was the same baggie in the video seen dropping from Bratton's pants, and, therefore, Bratton possessed the baggie of methamphetamine. Thus, we hold that the State provided sufficient evidence to support Bratton's conviction.

### III. CORPUS DELICTI

Bratton also contends that the State failed to provide substantial evidence to support the corpus delicti because no witness was able to confirm the baggie that fell from his pocket on the surveillance video was identical to the baggie found on the casino floor. We disagree.

To satisfy the corpus delicti rule, the State must present evidence, independent of the incriminating statement, to show that the crime described in the defendant's statement occurred. *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006). The purpose of the corpus delicti

rule is to prevent defendants from being unjustly convicted based on confessions alone. *State v. Dow*, 168 Wn.2d 243, 249. 227 P.3d 1278 (2010). The independent evidence need not be sufficient to support a conviction but must provide prima facie corroboration of the crime described in a defendant's incriminating statement. *Brockob*, 159 Wn.2d at 328. Prima facie corroboration exists if the independent evidence supports a "logical and reasonable inference" of the facts the State seeks to prove. *State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995). In determining whether this standard is satisfied, we review the evidence in the light most favorable to the State. *Brockob*, 159 Wn.2d at 328. The corpus delicti can be proved by direct or circumstantial evidence. *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996).

Here, Tribal gaming agent Graham testified that he reviewed a surveillance video that showed a small baggie fall from a man's pocket onto the casino floor near slot bank 52. Deputy Pickrell identified the man in the surveillance video as Bratton. And a small baggie was retrieved near slot bank 52 by casino employees. It is logical to deduce that the baggie Bratton dropped on the casino floor was the same one Stringer found in that same location. Viewing the evidence in the light most favorable to the State, prima facie corroboration exists to support a logical and reasonable inference that Bratton possessed the methamphetamine found on the casino floor. Accordingly, we hold that the State provided sufficient evidence to establish the corpus delicti.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Bratton argues that he received ineffective assistance of counsel because his attorney failed to object to the trial court's admission of his statements under the corpus delicti rule. We disagree.

We strongly presume that counsel's representation was effective. *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995). To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) defense counsel's representation was deficient and (2) there is a reasonable probability that the outcome would have been different but for counsel's deficient performance. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). We do "not address both prongs of the test for ineffective assistance of counsel if the defendant's showing on one prong is insufficient." *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 32-33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34.

Bratton must establish there is a reasonable probability that, except for his attorney's unprofessional error, the trial's outcome would have been different. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). In this context, Bratton must show that the outcome of his trial would have been different if his counsel had objected to the trial court's admission of his statements under the corpus delicti rule. *Gerdts*, 136 Wn. App. at 727. As noted above, the State satisfied the corpus delicti rule and any objection to the trial court's admission of Bratton's statements to police would not have succeeded. Thus, Bratton has failed to show that he was prejudiced due to his attorney's failure to object. Because Bratton's claim of ineffective assistance of counsel fails to meet one prong of the ineffective assistance of counsel test, we do not address whether counsel's representation was deficient. *Foster*, 140 Wn. App. at 273. We reject Bratton's argument that he received ineffective assistance of counsel.

No. 46885-9-II

In conclusion, we affirm Bratton's conviction, holding that the trial court did not err by denying his motion to suppress his statements, sufficient evidence supports his conviction, the corpus delicti rule was satisfied, and he did not receive the ineffective assistance of counsel.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Johanson, C.J.

Maxa, J.