IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79248-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TIMOTHY AFAMASAGA VAIVAIMULI, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — Timothy Afamasaga Vaivaimuli challenges his conviction for first degree robbery, contending he unequivocally asserted his right to remain silent following his Miranda[1] warnings and, as a result, the trial court erred by admitting statements he made to detectives. We affirm.

FACTS

On May 1, 2018, Vaivaimuli stole two pairs of shoes from the Snohomish Fred Meyer. As he ran to the getaway car, he dropped his cell phone, which broke into pieces. When Vaivaimuli bent down to pick up the pieces of his broken phone, he put the shoes on the ground. Fred Meyer's loss prevention officer, Jeff Wiley, approached Vaivaimuli, pointed to the badge on his belt, and told Vaivaimuli he

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Citations and pin cites are based on the Westlaw online version of the cited material.

was in security. Vaivaimuli grabbed for the shoes as Wiley ran for them, knocking them out of Vaivaimuli's hands. Vaivaimuli punched Wiley in the face—breaking his nose and his glasses and causing other injuries to his face. Vaivaimuli then gathered the shoes, got in the car, and drove away.

Based on security footage, police identified the vehicle in which Vaivaimuli fled and contacted its registered owner, Kyle Crumpton. Crumpton admitted he was driving the vehicle when Vaivaimuli stole the shoes and identified Vaivaimuli by his license photo.

Police arrested Vaivaimuli, and the State charged him with one count of first degree robbery. At the CrR 3.5 suppression hearing, Detective Barker testified that after arresting Vaivaimuli and reading the Miranda warnings, Vaivaimuli "responded in the affirmative" when asked if he understood his rights. When Detective Barker asked if Vaivaimuli would be willing to speak to him, Vaivaimuli said "not really," but "then he immediately followed that by asking a question about what this was about." Detective Barker remembered that Vaivaimuli was smiling as he said this, and he took that as an indication that Vaivaimuli was willing to talk to him. Detective Grieve testified that he found Vaivaimuli's "not really" response ambiguous.

Detective Barker then asked Vaivaimuli why he thought he was being arrested. Vaivaimuli "said something to the effect of the thing at Fred Meyer." According to Detective Barker, Vaivaimuli's response was instant—a "normal conversational pace." Detective Barker continued asking Vaivaimuli questions about the robbery at Fred Meyer; Vaivaimuli continued to respond and never

indicated that he wanted to end the conversation or stop answering the detective's questions.

The trial court admitted Vaivaimuli's post-Miranda statements, concluding that Vaivaimuli did not unequivocally invoke his right to remain silent and that his "demeanor of smiling[,] saying 'not really[,]' and immediately [initiating a] . . . conversation [with the arresting detectives] by asking, 'what is this about?' . . . [amounted to] a valid waiver implied by continued conversation."

The jury convicted Vaivaimuli as charged. He appeals.

<u>ANALYSIS</u>

Vaivaimuli argues the trial court erred when it concluded that his statement to Detective Barker—that he did "not really" want to talk—was equivocal. He also argues the trial court erred in concluding he impliedly waived his right to remain silent by discussing the charged crime with detectives. Because we conclude that Vaivaimuli's decision to engage Detective Barker in a conversation constituted an implied waiver of his right to remain silent, we need not determine whether his initial statement of "not really" was unequivocal.

To safeguard a person's Fifth Amendment right against self-incrimination, before any custodial interrogation, "a suspect must be informed that 'he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning.'" State v. Piatnitsky, 180 Wn.2d 407, 412, 325 P.3d 167 (2014) (quoting Miranda v. Arizona,

384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)).  Miranda rights must be invoked unambiguously.  Id. at 413.

In this case, we need not determine if Vaivaimuli unequivocally asserted his right to remain silent.  The trial court concluded that Vaivaimuli, by voluntarily engaging the detectives in a conversation after expressing his understanding of his rights, impliedly waived his right to remain silent.  We agree.

Even when a defendant unequivocally asserts a right to remain silent, that right can be waived by reinitiating a conversation with police.  In re Pers. Restraint of Cross, 180 Wn.2d 664, 682, 327 P.3d 660 (2014), abrogated on other grounds by State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018).  Our courts have found "[i]mplied waiver[s] . . . where the record reveals that a defendant understood his rights and volunteered information [and] where the record shows that a defendant's answers were freely and voluntarily made without duress, promise[,] or threat and with a full understanding of his constitutional rights."  State v. Terrovona, 105 Wn.2d 632, 646-47, 716 P.2d 295 (1986); accord Berghuis v. Thompkins, 560 U.S. 370, 385, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010) (law generally presumes "that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford").  We will infer a waiver when a defendant voluntarily discusses the charged crime with police officers and indicates an understanding of his rights.  State v. Ellison, 36 Wn. App. 564, 571, 676 P.2d 531 (1984).

Waiver is determined on the basis of the whole record before the court. State v. Gross, 23 Wn. App. 319, 324, 597 P.2d 894 (1979); accord North Carolina v. Butler, 441 U.S. 369, 374-75, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979) ("[T]he question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'") (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)).  The State bears the burden of showing, by a preponderance of the evidence, that Vaivaimuli understood his rights and voluntarily waived them. State v. Radcliffe, 164 Wn.2d 900, 905-06, 194 P.3d 250 (2008).  Because Vaivaimuli has not assigned error to any of the trial court's findings, we treat those findings as verities on appeal and limit our review to whether the trial court reached proper conclusions of law from its findings.  State v. I.B., 187 Wn. App. 315, 320, 348 P.3d 1250 (2015).

Here, the trial court found that Vaivaimuli understood his right to remain silent.  Nevertheless, after being informed of his rights, Vaivaimuli initiated the conversation with Detective Barker by asking why he was being arrested—and he thereafter volunteered information about the charged crime.  The trial court found that Vaivaimuli "made statements [to the detectives] knowingly, voluntarily, and without threats, promises, or coercion."  Under Cross, Terrovona, and Ellison, we infer that Vaivaimuli waived his right to remain silent because his conduct was inconsistent with exercising that right and demonstrated a deliberate choice to relinquish the protection that right affords.  See Gross, 23 Wn. App. at 324 (court entitled to infer waiver from defendant's understanding of his rights and from the

voluntariness of his conversation with the officers).  We conclude the trial court's findings of fact support its conclusion that Vaivaimuli impliedly waived his right to remain silent.  Accordingly, the trial court did not err by admitting Vaivaimuli's post-Miranda statements.

Affirmed.

Andrus, A.C.J.

WE CONCUR: